Tiffany Nicole **HAMMOND**, Tamatha Crowder, Jeannie Trotter, and Virginia Darlene Quarles, Plaintiffs,

v.

**GORDON COUNTY**, William S. Roberts, Sheriff of Gordon County, in his official and individual capacity, Walter Christian, in his official and individual capactity, Kenyon T. Trammel, in his official and individual capacity, Brian Crider, in his official and individual capacity, Mark Highfield, in his official and individual capacity, Mike Gravitt, in his official and individual capacity, Robert Johnson, in his official and individual capacity, Johnny Duncan, in his official and individual capacity, Kevin Vaughn, in his official and individual capacity, Tricia Bridwell, in her official and individual capacity, Jeremy Battles, in his official and individual capacity, and M.S. Jones, in his official and individual capacity as Jail Administrator, Defendants.

No. CIV.A.4:00–CV0387HLM.

United States District Court,
N.D. Georgia,
Rome Division.

April 29, 2002.

---

Steven Keith Leibel, Michael Thomas McCulley, Casey Gilson Leibel, Atlanta, GA, Stephen Forrest Lanier, Lanier Firm, Rome, GA, for plaintiffs.

Ronald R. Womack, John T. Siess, The Womack Law Firm, LaFayette, GA, Martha Suzanne Hutchinson, Calhoun, GA, Donald Andrew Cronin, Jr., O'Quinn & Cronin, McDonough, GA, for defendants.

## ORDER

MURPHY, District Judge.

This is a civil rights action filed pursuant to 42 U.S.C.A. § 1983. The case is before the Court on the Joint Motion by Defendants Gordon County, Christian, Trammel, Crider, Highfield, Gravitt, Bridwell, Jones,

Roberts, and Davis to Disallow Plaintiffs' Use of Expert Witness [31], Defendant Gordon County's Motion for Summary Judgment [41], the Motion for Summary Judgment Filed by Defendants Crider, Gravitt, Johnson, Jones, Roberts, and Davis [43], Defendant Bridwell's Motion for Summary Judgment [45], Defendant Highfield's Motion for Summary Judgment [46], Defendant Trammel's Motion for Summary Judgment [47], Defendant Christian's Motion for Summary Judgment [48], and Defendants' Objections to the Affidavit of David M. Bogard [63].

## I. Motion to Disallow Plaintiffs' Use of Expert Witness and Objections to the Affidavit of David M. Bogard

On November 1, 2001, Defendants filed a Motion to Disallow Plaintiffs' Use of Expert Witness.[1] Defendants argue that Plaintiffs failed to produce the expert report of David M. Bogard in a timely fashion, and that the report contains inadmissible legal conclusions. When Plaintiffs filed the Affidavit of David M. Bogard in response to Defendants' Motions for Summary Judgment, Defendants objected to the Affidavit, citing the arguments that Defendants raised in their Motion to Disallow Plaintiffs' Use of Expert Witness.

Plaintiffs did not formally disclose their plans to use Mr. Bogard as an expert witness until April 9, 2001, when Plaintiffs amended their responses to the mandatory

disclosures to identify Mr. Bogard and to provide his expert report. By that time, the discovery period had almost concluded, leaving Defendants without sufficient time to depose Mr. Bogard and to retain their own expert. The Court finds that Plaintiffs' delay in disclosing Mr. Bogard and in producing Mr. Bogard's expert report violated Federal Rule of Civil Procedure 26(a)(2)(B) and Local Rule 26.3, and that this delay prejudiced Defendants. The Court therefore will not permit Plaintiffs to use Mr. Bogard's Affidavit or expert testimony in connection with Defendants' pending Motions for Summary Judgment.[2] The Court may consider allowing Plaintiffs to use Mr. Bogard's testimony at trial, conditioned upon a forty-five day extension of discovery to allow Defendants to depose Mr. Bogard and to retain their own expert.[3]

## II. Background

Keeping in mind that when deciding a motion for summary judgment, the Court "must view the evidence and all factual inferences in the light most favorable to the party opposing the motion," the Court provides the following statement of facts. *Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d 465, 469 (11th Cir.1993). This statement does not represent actual findings of fact; rather, it is intended simply to place the Court's legal analysis within the context of a specific case or controver-

---

**1.** The Court ordinarily would have ruled on this Motion long before Defendants filed their Motions for Summary Judgment. This Motion, however, never was formally submitted to the Court for a ruling, and the Court came across it only when the Court prepared to rule on the Motions for Summary Judgment.

**2.** The Court observes that Mr. Bogard's testimony did not influence the Court's ruling on the Motions for Summary Judgment.

**3.** Defendants also argue that Mr. Bogard's expert report is "rife" with inadmissible state-

ments in the form of legal conclusions. Other than pointing to the final paragraph of Mr. Bogard's expert report, Defendants have not identified specific statements that Defendants find objectionable. Absent some direction from Defendants, the Court is not willing to parse Mr. Bogard's report line-by-line to determine which statements Defendants find objectionable. The Court observes, however, that some of the statements contained in Mr. Bogard's report may well be inappropriate statements of legal conclusions.

sy. *Swint v. City of Wadley,* 51 F.3d 988, 992 (11th Cir.1995) ("[W]hat we state as 'facts' in this [order] for purposes of reviewing the ruling[ ] on the summary judgment motion[ ] may not be the actual facts. They are, however, the facts for present purposes, and we set them out below.").

## A. The Parties

Plaintiff Hammond resides in Silver Creek, Georgia. (Dep. of Tiffany Hammond at 5.) During the time period relevant to this lawsuit, Plaintiff Hammond was an inmate residing in the Gordon County Jail (the "Jail"). (Compl.¶ 2.)

Plaintiff Trotter is a resident of Calhoun, Georgia. (Dep. of Jeannie Trotter at 6.) From late 1998 to April 13, 1999, Plaintiff Trotter was an inmate residing in the Jail. (*Id.* at 132.)

Plaintiff Crowder is a resident of Calhoun, Georgia. (Dep. of Tamatha Crowder Hayes at 4.) During the time period relevant to this action, Plaintiff Crowder was an inmate residing in the Jail. (Compl.¶ 3.)

Plaintiff Quarles resides in Calhoun, Georgia. (Dep. of Virginia Darlene Quarles at 4.) Plaintiff Quarles was an inmate residing in the Jail from February 1999 to August 1999. (*Id.* at 5.)

Defendant Gordon County, Georgia ("Defendant Gordon County") is a political subdivision of the State of Georgia. (Compl.¶ 7.) As part of its activities, Defendant Gordon County maintains the Jail.

Defendant Roberts resides in Calhoun, Georgia. (Dep. of William Sidney Roberts at 6.) During the time period relevant to this action, Defendant Roberts served as the sheriff of Defendant Gordon County. (Aff. of William Sidney Roberts ¶ 2; Roberts Dep. at 18.)

Defendant Davis currently serves as the sheriff of Defendant Gordon County. (Order of Mar. 22, 2001.) On March 22, 2001, the Court entered an Order substituting Defendant Davis, in his official capacity, for Defendant Roberts, in his official capacity. (*Id.*)

Defendant Crider is an employee of the Gordon County Sheriff's Office ("GCSO"). (Aff. of Brian Crider ¶ 2.) During the time period relevant to this action, Defendant Crider worked as a deputy jailer at the Jail. (*Id.*)

Defendant Gravitt is an employee of the GCSO. (Aff. of Mike Gravitt ¶ 2.) During the time period relevant to this action, Defendant Gravitt worked as a sergeant at the Jail. (Dep. of Robert Lee Johnson at 76–77.)

Defendant Jones was an employee of the GCSO. (Aff. of Michael Jones ¶ 2.) From January 1999 to October 2000, Defendant Jones served as the administrator for the Jail. (Dep. of Michael Jones at 7–8, 11–12.) Defendant Jones' duties included ensuring the safety and security of inmates at the Jail. (*Id.* at 14.)

Defendant Johnson resides in Calhoun, Georgia, and is an employee of the GCSO. (Aff. of Robert Johnson ¶ 2; Dep. of Robert Lee Johnson at 6.) During the time period relevant to this action, Defendant Johnson worked as a deputy jailer at the Jail. (Johnson Dep. at 6.)

Defendant Bridwell resides in Calhoun, Georgia. (Dep. of Tricia Casey Bridwell at 6.) During the time period relevant to this action, Defendant Bridwell served as a deputy jailer at the Jail. (*Id.* at 19.)

Defendant Christian resides in Cartersville, Georgia. (Dep. of Walter Z. Christian at 5.) Defendant Christian worked for the GCSO as a deputy jailer at the Jail from November 1998 to April 1999. (*Id.* at 8.)

Defendant Highfield resides in Cave Spring, Georgia. (Dep. of Mark Allen Highfield at 21.) During the time period relevant tot his action, Defendant High-

field served as a deputy jailer at the Jail. (*Id.* at 45.)

Defendant Trammel is a resident of Calhoun, Georgia. (Dep. of Kenyon Trammel at 6.) During the time period relevant to this action, Defendant Trammel worked as a deputy jailer or as a sergeant at the Jail. (*Id.* at 17, 99.)

Defendant Duncan resides in Calhoun, Georgia. (Compl. ¶ 16.) During the time period relevant to Plaintiff's Complaint, Defendant Duncan served as a deputy jailer at the Jail. (*Id.*)

Defendant Vaughn also is a resident of Calhoun, Georgia. (Compl. ¶ 17.) Defendant Vaughn served as a deputy jailer at the Jail during the time period relevant to this action. (*Id.*)

Defendant Battle is a resident of Calhoun, Georgia. (Compl. ¶ 19.) During the time period relevant to this action, Defendant Battle served as a deputy jailer at the Jail. (*Id.*)

## B. The Events Giving Rise to this Lawsuit

### 1. "Flashing"

According to Plaintiffs, jailers refused to give female inmates toilet paper or feminine hygiene products, such as sanitary napkins or tampons. (Quarles Dep. at 11; Hammond Dep. at 40.) Some of the Plaintiffs have testified that certain Defendants, including Defendant Highfield, required female inmates to "flash," or show their breasts, to obtain toilet paper or feminine hygiene products. (Crowder Dep. at 9; Hammond Dep. at 40.) Plaintiffs also have testified that jailers instructed, or asked, female inmates to "flash," or show their breasts, in exchange for cigarettes. (Quarles Dep. at 13, 39.)

Plaintiff Hammond testified that Defendant Highfield asked Plaintiff Hammond to strip for cigarettes on two occasions. (Hammond Dep. at 72.) Plaintiff Ham-

mond stripped for Defendant Highfield in exchange for cigarettes. (*Id.*)

Plaintiff Hammond also has testified that Defendant Johnson asked Plaintiff Hammond and other female inmates to strip in exchange for cigarettes. (Hammond Dep. at 119.) Plaintiff Hammond stripped for Defendant Johnson in exchange for cigarettes. (*Id.*)

On one occasion, Defendant Johnson asked Plaintiff Trotter to "flash" Defendant Johnson in exchange for cigarettes. (Trotter Dep. at 99, 145.) Plaintiff Trotter refused to "flash" Defendant Johnson. (*Id.*)

Plaintiff Quarles "flashed" jailers "a couple of times" in exchange for cigarettes. (Quarles Dep. at 40.) Plaintiff Quarles, however, testified that she did not mind "flashing" for cigarettes because she is a smoker. (*Id.*)

Plaintiff Crowder "flashed" jailers between ten and twenty times in exchange for feminine hygiene products and toilet paper. (Crowder Dep. at 70–71, 122.) Plaintiff Crowder occasionally refused to "flash" jailers in exchange for those items. (*Id.* at 72, 122.) When Plaintiff Crowder refused to "flash" certain jailers, Plaintiff Crowder did not receive the items she requested. (*Id.* at 72.) According to Plaintiff Crowder, Defendants Highfield and Johnson requested that Plaintiff Crowder "flash" them. (*Id.* at 99, 104–06, 122.)

### 2. Sexual Relationships or Contact

### a. Plaintiff Trotter

In late 1998, Defendant Christian made comments concerning his interest in Plaintiff Trotter to other inmates. (Trotter Dep. at 23.) In December 1998, Plaintiff Trotter and Defendant Christian began having conversations with one another. (*Id.* at 26–28.)

At some point in 1999, Defendant Christian entered Plaintiff Trotter's cell while Plaintiff Trotter was sleeping. (Trotter Dep. at 28–29, 31–32.) Defendant Christian touched Plaintiff Trotter's face and then left the room. (*Id.*)

On March 2, 1999, Defendant Christian again entered Plaintiff Trotter's cell. (Trotter Dep. at 35–38; Hammond Dep. at 44.) According to Plaintiff Trotter, Defendant Christian touched Plaintiff Trotter's "private part" and subsequently forced his penis into Plaintiff Trotter's vagina. (Trotter Dep. at 35–38.) Defendant Christian did not use a condom. (Christian Dep. at 28.) Plaintiff Trotter contends that she told Defendant Christian to stop, but Defendant Christian continued his activities. (Trotter Dep. at 37.) On that occasion, Plaintiff Hammond apparently was present in the cell. (Hammond Dep. at 45.)

On March 15, 1999, Plaintiff Trotter and Defendant Christian again engaged in sex. (Hammond Dep. at 48; Trotter Dep. at 40–41, 46.) Once again, Defendant Christian did not use a condom. (Christian Dep. at 28.) According to Plaintiff Trotter, Plaintiff Trotter did not want to engage in sex with Defendant Christian; however, Plaintiff Trotter felt that she "owed it" to Defendant Christian to have sex with him because Defendant Christian had given her gifts. (Trotter Dep. at 40–41, 46.)

On March 20, 1999, Defendant Christian and Plaintiff Trotter engaged in sex in the cell shared by Plaintiffs Hammond and Trotter. (Trotter Dep. at 47–48, 75–76; Christian Dep. at 24; Hammond Dep. at 48, 50–51, 54–55.) Again, Defendant Christian did not use a condom. (Christian Dep. at 28.) Defendant Trammel and Plaintiff Hammond also engaged in sex in the cell, apparently at the same time. (Christian Dep. at 24; Hammond Dep. at 48, 50–51, 54–55; Trotter Dep. at 47–48, 75–76.)

On March 23, 1999, Plaintiff Trotter and Defendant Christian again engaged in sex. (Hammond Dep. at 56–58.) Plaintiff Trotter and Defendant Christian also kissed and talked on this occasion. (*Id.* at 56–58.) Defendant Christian, again, did not use a condom. (Christian Dep. at 28.)

On March 28, 1999, Plaintiff Trotter and Defendant Christian also had sex. (Hammond Dep. at 60.) Defendant Christian did not use a condom during this sexual contact. (Christian Dep. at 28.)

At one point, Defendant Christian asked Plaintiff Trotter to dance nude for him. (Trotter Dep. at 144–45.) Plaintiff Trotter complied with this request. (*Id.*)

Defendant Christian gave Plaintiff Trotter gifts while Plaintiff Trotter was incarcerated at the Jail. (Christian Dep. at 30.) Specifically, Defendant Christian gave Plaintiff Trotter a hair permanent and clothes, placed money in Plaintiff Trotter's inmate account, sent Plaintiff Trotter a card, and gave Plaintiff Trotter a photograph of himself. (Christian Dep. at 30; Trotter Dep. at 20, 40–42.)

Defendant Christian wrote letters to Plaintiff Trotter, and told Plaintiff Trotter that Defendant Christian "loved" Plaintiff Trotter. (Trotter Dep. at 89–91.) Plaintiff Trotter wrote letters to Defendant Christian, and told Defendant Christian that she "loved him." (*Id.* at 91–92, 120–23.) Plaintiff Trotter, however, testified that she was afraid of Defendant Christian, and that she wrote letters to Defendant Christian because Defendant Christian wanted Plaintiff Trotter to write letters to him. (*Id.* at 121–23.)

On one occasion, Defendant Christian pointed a gun at Plaintiff Trotter when he observed Plaintiff Trotter talking to a male inmate through the cell. (Hammond Dep.

at 61; Trotter Dep. at 42–45, 127–29.) Plaintiff Hammond observed this incident. (Hammond Dep. at 61; Trotter Dep. at 42–45, 127–29.)

### b. Plaintiff Hammond

### i. Contact With Defendant Crider

Plaintiff Hammond was incarcerated in the Jail in 1997. (Hammond Dep. at 66–68.) During her 1997 incarceration, Plaintiff Hammond engaged in sex with Defendant Crider on two occasions. (*Id.*) Plaintiff Hammond has testified that she voluntarily engaged in sex with Defendant Crider on those occasions. (*Id.*)

### ii. Contact With Sherry Crowder Robinson

At some point during her 1999 incarceration in the Jail, Plaintiff Hammond recalls that Defendant Highfield and a male inmate, Nathaniel "Boogie" Clark, asked Plaintiff Hammond to engage in oral sex with another female inmate, Sherry Crowder Robinson. (Hammond Dep. at 99, 130–35.) Defendant Highfield promised Plaintiff Hammond and Ms. Robinson cigarettes in exchange for this behavior. (*Id.* at 134.) Ms. Robinson then performed oral sex upon Plaintiff Hammond while Defendant Highfield and Mr. Clark observed this activity. (*Id.* at 134–35.) Afterward, Mr. Clark brought cigarettes to Plaintiff Hammond and Ms. Robinson. (*Id.*) According to Plaintiff Hammond, Defendant Highfield instructed Mr. Clark to provide Plaintiff Hammond and Ms. Robinson with cigarettes. (*Id.* at 135.)

Plaintiff Hammond also recalls that, at some point during her 1999 incarceration, Defendant Johnson stated that he wanted to see Plaintiff Hammond and Ms. Robinson "eat pussy." (Hammond Dep. at 132.) On the following day, Plaintiff Hammond engaged in oral sex with Ms. Robinson while Defendant Johnson watched. (*Id.* at 132–33.) Plaintiff Hammond claims that she received cigarettes in return for complying with Defendant Johnson's request. (*Id.* at 133.)

### iii. Contact With Corey Ricks

On at least three occasions during Plaintiff Hammond's 1999 incarceration at the Jail, Plaintiff Hammond had sexual contact with inmate Corey Ricks. (Hammond Dep. at 38.) On one occasion, Mr. Ricks "rubbed on" Plaintiff Hammond's privates. (*Id.* at 38.) Plaintiff Hammond did not report Mr. Ricks' behavior at that time; however, Plaintiff Hammond has testified that Mr. Ricks' behavior "kind of" offended Plaintiff Hammond. (*Id.*) After Mr. Ricks "rubbed on" Plaintiff Hammond's privates, Plaintiff Hammond received cigarettes. (*Id.* at 41.)

On another occasion, Plaintiff Hammond kissed Mr. Ricks in Plaintiff Hammond's cell. (Hammond Dep. at 41–42.) According to Plaintiff Hammond, Defendant Bridwell had given Mr. Ricks access to Plaintiff Hammond's cell to spray for bugs. (*Id.* at 42.)

On or about March 5, 1999, Defendant Christian allowed Mr. Ricks to enter Plaintiff Hammond's cell. (Christian Dep. at 75; Hammond Dep. at 46.) While Mr. Ricks remained in Plaintiff Hammond's cell, Plaintiff Hammond and Mr. Ricks engaged in sex. (Hammond Dep. at 45.) Plaintiff Hammond has stated that she did not object to having sex with Mr. Ricks. (*Id.* at 46.) Plaintiff Hammond testified that she received cigarettes, shampoo, candy bars, Cokes, and marijuana from Mr. Ricks in exchange for sex. (*Id.* at 100.)

### iv. Contact With Defendant Trammel

According to Plaintiff Hammond, Defendant Trammel approached Plaintiff Hammond and promised Plaintiff Hammond that Defendant Trammel would give her

anything she wanted in exchange for sex. (Hammond Dep. at 51–54.) On March 20, 1999, Plaintiff Hammond and Defendant Trammel engaged in sex in Plaintiff Hammond's cell. (*Id.* at 48.) Defendant Christian and Plaintiff Trotter also were present in the cell, and apparently were also engaging in sex. (*Id.* at 49–50.) On that same day, Plaintiff Hammond received cigarettes, shampoo, Dr. Pepper, and candy, apparently from Defendant Trammel. (*Id.* at 50.)

On March 23, 1999, Plaintiff Hammond again had sex with Defendant Trammel. (Hammond Dep. at 56.) Apparently, Defendant Christian and Plaintiff Trotter also engaged in sex in the same cell. (*Id.*)

### v. Contact With Nathaniel "Boogie" Clark

On March 21, 1999, Plaintiff Hammond kissed Mr. Clark. (Hammond Dep. at 54–55.) Plaintiff Hammond requested that Defendant Bridwell allow Plaintiff Hammond to engage in sex with inmates. (Hammond Dep. at 24–25.)

On March 27, 1999, Defendant Bridwell opened the door of Plaintiff Hammond's cell to allow Mr. Clark to visit with Plaintiff Hammond. (Bridwell Dep. at 32, 65, 76; Highfield Dep. at 41–42; Hammond Dep. at 24–25, 59–60.) Plaintiff Hammond and Mr. Clark then engaged in sex. (Bridwell Dep. at 32; Hammond Dep. at 59–60.) Defendant Bridwell observed Plaintiff Hammond and Mr. Clark engaging in sex. (Bridwell Dep. at 32.) According to Plaintiff Hammond, Plaintiff Hammond received cigarettes from Mr. Clark in exchange for sex. (Hammond Dep. at 100.)

### vi. Contact With Clifford "Beebe" Waller

At some point during her 1999 incarceration, Plaintiff Hammond also engaged in sex with an inmate named Clifford "Beebe" Waller. (Hammond Dep. at 61, 65.) According to Plaintiff Hammond, Mr. Waller informed Plaintiff Hammond that Plaintiff Hammond had to sleep with Mr. Waller if Plaintiff Hammond wanted cigarettes. (*Id.* at 61.) Plaintiff Hammond testified that she received Cokes, candy, and cigarettes from Mr. Waller in exchange for sex. (*Id.* at 100.)

### vii. Contact With Defendant Johnson

Finally, at some point during Plaintiff Hammond's 1999 incarceration, Defendant Johnson revealed his penis to Plaintiff Hammond and Ms. Robinson. (Hammond Dep. at 119–20.) At the time, Plaintiff Hammond and Ms. Robinson were talking to Defendant Johnson. (*Id.* at 120.) Plaintiff Hammond, however, has indicated that she and Ms. Robinson did not request Defendant Johnson to expose his penis to them. (*Id.*)

### c. Plaintiff Crowder

### i. 1996 Incarceration

In 1996, Plaintiff Crowder was incarcerated at the Jail. (Crowder Dep. at 12.) During her 1996 incarceration, Plaintiff Crowder had sexual contact with at least two jailers and another inmate.

### aa. Contact With Defendant Duncan

In 1996, Plaintiff Crowder engaged in sexual relations with Defendant Duncan while incarcerated at the Jail. (Crowder Dep. at 13, 96.) Plaintiff Crowder has testified that she willingly engaged in sexual relations with Defendant Duncan. (*Id.* at 74.)

### bb. Contact With Defendant Vaughn

In 1996, Plaintiff Crowder also had sexual contact with Defendant Vaughn. (Crowder Dep. at 13, 96.) Plaintiff Crowder contends that her sexual contact with

Defendant Vaughn in 1996 was not consensual. (Crowder Dep. at 14.) In particular, Plaintiff Crowder testified that Defendant Vaughn approached Plaintiff Crowder from behind and penetrated her vagina with his hands while Plaintiff Crowder spoke on a telephone inside the booking area. (*Id.* at 79–80.)

### cc. Contact With Defendant Crider

Plaintiff Crowder contends that in 1996, Defendant Crider asked female inmates to kiss and touch each other in exchange for "things." (Crowder Dep. at 14.) Defendant Crider allegedly asked Plaintiff Crowder to show him her breasts and to dance for him. (*Id.* at 15.) Defendant Crider also pulled out his penis and displayed it to female inmates. (*Id.* at 14.) Plaintiff Crowder also testified that Defendant Crider turned the power off on two occasions, and stated that he would turn the power back on if the female inmates touched each other and bared their body parts. (*Id.* at 80–81.)

### dd. Contact With Faith Fogel

According to Plaintiff Crowder, in 1996, Defendant Crider showed Plaintiff Crowder his penis and asked her to have sex with female inmate Faith Fogel. (*Id.* at 60, 78–79.) Plaintiff Crowder refused to have sex with Ms. Fogel, but she and Ms. Fogel touched each other's breasts in front of Defendant Crider. (*Id.* at 78–79.)

### ii. 1999 Incarceration

During her 1999 incarceration, Plaintiff Crowder did not engage in sexual activities at the Jail. (Crowder Dep. at 19.) Plaintiff Crowder, however, complains of unwanted sexual contact with Defendant Johnson following her hospitalization after a suicide attempt, and of one sexually-related comment by Defendant Trammel. (*Id.* at 24–25, 46–47, 96.)

### aa. Contact With Defendant Johnson

According to Plaintiff Crowder, Defendant Johnson was assigned to guard Plaintiff Crowder during the third day of her hospital stay. (*Id.* at 28.) Defendant Johnson commented to Plaintiff Crowder that Plaintiff Crowder was attractive, and that Defendant Johnson would leave his wife for Plaintiff Crowder if Plaintiff Crowder was out of jail. (*Id.* at 29.) Plaintiff Crowder subsequently fell asleep. (*Id.* at 30.) Plaintiff Crowder awoke to find Defendant Johnson penetrating her vagina with his fingers. (*Id.* at 30–31, 53–56.) Plaintiff Crowder pushed Defendant Johnson's hand away, and Defendant Johnson left the room. (*Id.*)

### bb. Comments By Defendant Trammel

According to Plaintiff Crowder, Defendant Trammel asked Plaintiff Crowder why Plaintiff Crowder never talked to him. (Crowder Dep. at 46–47, 96.) Plaintiff Crowder responded by rolling her eyes. (*Id.*) Defendant Trammel commented that Plaintiff Crowder did not "go that way." (*Id.*) Plaintiff Crowder believes that Defendant Trammel meant that Plaintiff Crowder was not interested in Defendant Trammel because of his race. (*Id.* at 96.)

### d. Plaintiff Quarles

According to Plaintiff Quarles, Plaintiff Quarles did not have sexual relations with any of the jailers employed at the Jail. (Quarles Dep. at 12.) Other than Defendant Christian, none of the jailers requested sex from Plaintiff Quarles, engaged in overt sexual acts toward Plaintiff Quarles, or touched Plaintiff Quarles. (*Id.*)

Plaintiff Quarles, however, complains that Defendant Christian made an improper comment to her in March or April 1999. (Quarles Dep. at 24.) According to Plaintiff Quarles, she was placed in a holding cell at the Jail. (Quarles Dep. at 24.) Jail-

ers would not allow Plaintiff Quarles to leave the holding cell to go to the bathroom. (*Id.*)

According to Plaintiff Quarles, when Plaintiff Quarles requested permission to go to the bathroom, Defendant Christian responded, "Suck my dick and I'll let you out to use the bathroom." (*Id.* at 24, 35.) Plaintiff Quarles responded, "Bring it on in here." (*Id.* at 24, 36, 44.) Defendant Christian laughed, and did not enter the cell or otherwise accept Plaintiff Quarles' invitation. (*Id.* at 24, 26, 44.) Plaintiff Quarles believed that Defendant Christian was joking. (*Id.* at 44.) According to Plaintiff Quarles, Plaintiff Quarles was angry, and "would have bit it [Defendant Christian's penis] off for him" if Defendant Christian had accepted her invitation. (*Id.* at 24, 44.) Plaintiff Quarles used the bathroom on herself. (*Id.* at 36.)

### 3. The Investigation and Related Events

In April 1999, Jail officials began investigating reports of sexual relationships between jailers and inmates. (Jones Dep. at 125, 168–69.) During that investigation, GCSO officers interviewed inmates and jailers. (Jones Dep. at 125.) The Georgia Bureau of Investigation ("GBI") also participated in the investigation. (*Id.*)

On April 9, 1999, Defendant Christian's employment with the GCSO was terminated as a result of the April 1999 investigation. (Christian Dep. at 8; Jones Dep. at 136; Roberts Dep. at 178.) Defendant Bridwell's employment with the GCSO also was terminated as a result of the April 1999 investigation. (Jones Dep. at 127, 136.) Defendant Trammel's employment with the GCSO also was terminated as a result of the April 1999 investigation. (Jones Dep. at 136; Roberts Dep. at 178.) Defendant Highfield resigned his employment with the GCSO as a result of the April 1999 investigation. (Highfield Dep. at 45; Jones Dep. at 126–27.)

On April 12 or 13, 1999, Plaintiff Trotter learned that she was pregnant as a result of her relationship with Defendant Christian. (Trotter Dep. at 54–55.) On April 13, 1999, Plaintiff Trotter was released from the Jail. (*Id.* at 132.)

In late April 1999, following Plaintiff Trotter's release from jail, Defendant Christian took Plaintiff Trotter to have an abortion. (Christian Dep. at 35–36, 47; Trotter Dep. at 81.) Defendant Christian paid for the abortion. (Christian Dep. at 41; Trotter Dep. at 149.) According to Plaintiff Trotter, Defendant Christian "pressured" Plaintiff Trotter to have an abortion by informing Plaintiff Trotter that Defendant Christian already was paying child support, that Defendant Christian was in enough trouble already, and that Plaintiff Trotter and Defendant Christian needed to "take care of this." (Trotter Dep. at 80–82.) Plaintiff Trotter claims that she did not want to have an abortion. (*Id.*)

At some point after Plaintiff Trotter's release from jail, Defendant Christian and Plaintiff Trotter engaged in sex. (Trotter Dep. at 49.) At some point in late 1999, Defendant Christian tried to kick Plaintiff Trotter's door down, tried to contact Plaintiff Trotter through relatives, and tracked Plaintiff Trotter when she moved. (*Id.* at 83–87.) Defendant Christian has not contacted Plaintiff Trotter since 1999. (*Id.* at 85.)

Defendant Christian subsequently pleaded guilty to charges of an improper relationship or improper touching of a female. (Christian Dep. at 25.) Defendant Trammel also pleaded guilty to charges of having sex with Plaintiff Hammond and of violating his oath of office. (Trammel Dep. at 104, 107.)

## C. History of Allegations of Sexual–Related Misconduct

In 1996, complaints surfaced concerning allegedly improper sexual relationships between Faith Ann Fogel, an inmate at the Jail, and three jailers. (Roberts Dep. Pls.' Ex. 29; Dep. of Kevin Vaughn at 22–23; Roberts Dep. at 11, 14–15.) Ms. Fogel alleged that jailers had written her letters and given her cigarettes, that a jailer had exposed his genitals to female prisoners, and that a jailer had made an improper remark to her. (Roberts Dep. Pls.' Ex. 29; Vaughn Dep. at 22–23.) Jail administrators conducted an internal investigation concerning those allegations. (Roberts Dep. Pls.' Ex. 29; Vaughn Dep. at 22–23; Roberts Dep. at 14–15, 37.) According to Defendant Roberts, the GBI also assisted in the investigation. (Roberts Dep. at 14.) As a result of the deposition, two jailers pleaded guilty to criminal charges. (*Id.* at 12.)

In 1998, female inmates at the Jail filed complaints or grievances concerning allegedly improper behavior by jailers and inmates. (Roberts Dep. Pls.' Ex. 29; Vaughn Dep. at 30; Roberts Dep. at 41.) In particular, the female inmates complained that Sergeant Tippens, Deputy Reynolds, Deputy Bennett, and Deputy Poarch allowed inmates to bring tobacco into the Jail, and that Deputy Poarch and Deputy McCain sold tobacco to inmates. (Roberts Dep. Pls.' Ex. 29.) The female inmates also complained that Deputies Reynolds, Poarch, Parrott, and Tippens watched female inmates strip and engage in oral sex. (*Id.*) The female inmates further alleged that Deputy Reynolds allowed male inmates to watch female inmates engage in oral sex, and allowed the male inmates to masturbate while viewing those occurrences. (*Id.*) Additionally, the female inmates complained that Sergeant Tippens grabbed his penis and shook it at female inmates. (*Id.*) Finally, the female inmates

alleged that a trusty or deputy brought certain female inmates cigarettes, marijuana, and cocaine. (*Id.*) Jail administrators conducted an internal investigation concerning those allegations. (*Id.*)

## D. Hiring of Jail Personnel

Defendant Roberts delegated responsibility for hiring jailers to the staff sergeant. (Roberts Dep. at 48–49.) Defendant Jones testified that jailers were hired based on applications and interviews, and that applicants were required to submit to a polygraph examination and a background check. (Jones Dep. at 96.) Defendants Bridwell, Highfield, and Christian, however, testified that they never took polygraph examinations. (Bridwell Dep. at 16; Christian Dep. at 11, 17; Highfield Dep. at 14.) Applicants were not required to undergo psychological examinations prior to hiring. (Bridwell Dep. at 16, 11, 17; Highfield Dep. at 14; Jones Dep. at 97.)

## E. Training Provided to Jail Personnel

Defendant Roberts has testified that new jailers received hands-on training by being assigned to work under the supervision of an experienced employee. (Roberts Dep. at 19–30, 145–46.) Some of the Defendants also attended a two-week jail school—often after having been employed at the Jail for six months. (Bridwell Dep. at 21–22; Johnson Dep. at 6–7, 27–28.) The topics covered at the jail school included proper contact between males and females in a jail situation. (Bridwell Dep. at 21–22.)

Certain jail personnel attended a county-wide sexual harassment training seminar provided by Defendant Gordon County. (Vaughn Dep. at 33; Jones Dep. at 103; Roberts Dep. at 145–46.) That training seminar addressed sexual harassment of co-workers, and did not purport to address sexual harassment of inmates.

(Jones Dep. at 103.) At least one of the Defendants testified that she did not attend the county-wide sexual harassment seminar. (Bridwell Dep. at 36.)

Jailers did not receive other training concerning sexual harassment or interaction with female inmates. (Christian Dep. at 22, 45; Vaughn Dep. at 19–20; Highfield Dep. at 19; Trammel Dep. at 107; Jones Dep. at 92, 104.) Jailers also did not receive training concerning improper sexual contact with inmates, or training concerning preventing sexual contact between inmates. (Christian Dep. at 66, 74; Highfield Dep. at 19; Trammel Dep. at 63; Jones Dep. at 92.)

Other Defendants have testified that they received no training concerning dealing with inmates with psychological problems or inmates with disabilities. (Bridwell Dep. at 74.) Some Defendants also testified that jailers received no formal training concerning conducting body cavity searches, conducting strip searches, handling prisoner grievances, or dealing with suicide attempts. (Highfield Dep. at 20; Bridwell Dep. at 74–75; Christian Dep. at 45; Trammel Dep. at 114.) Finally, some Defendants have testified that they received no training concerning AIDS or AIDS prevention. (Bridwell Dep. at 46.)

At least some of the Defendants received formal training in certain areas, including: (1) the proper use of pepper spray; (Highfield Dep. at 25; Bridwell Dep. at 80; Johnson Dep. at 26; Christian Dep. at 20; Trammel Dep. at 15); (2) civil rights (Johnson Dep. at 27); and (3) training concerning privacy and security with respect to the Georgia Crime Information Center ("GCIC") computer system (Johnson Dep. at 27; Trammel Dep. at 16.)

### F. Supervision Provided to Jail Personnel

Defendant Bridwell testified that the jailers did not receive supervision. (Bridwell Dep. at 27.) According to Defendant Bridwell, jailers did "whatever they wanted." (*Id.*)

Defendant Jones testified that jailers were to receive performance evaluations every six months, and that the sergeants on duty were to conduct those evaluations. (Jones Dep. at 101.) Some Defendants, however, have testified that they did not receive written evaluations or performance reviews. (Bridwell Dep. at 48–49; Christian Dep. at 19–20.)

Defendant Jones, in his capacity as Jail Administrator, toured the Jail every two to four weeks. (Jones Dep. at 89–90.) Defendant Jones' office was in the booking area of the Jail. (*Id.* at 90.) Defendant Jones saw the Jail staff every day, and scheduled a formal meeting every four or five months. (*Id.* at 98.)

Defendant Roberts toured the Jail approximately once every three months. (Jones Dep. at 89.) Defendant Jones testified that he talked to Defendant Roberts four or five times each week. (Jones Dep. at 132.) Defendant Roberts testified that he met with all the jailers approximately two times each year to discuss things such as budgets. (Roberts Dep. at 85.)

### G. Policies of the Jail

The Jail did not establish policies concerning sexual harassment of inmates. (Johnson Dep. at 44; Jones Dep. at 169.) Defendant Jones and Defendant Roberts, however, testified that the Jail has an unwritten policy that prohibits male jailers from performing searches of female inmates. (Jones Dep. at 22–26, 34; Roberts Dep. at 102.) If a female jailer is not available, females on duty in the dispatch center or in the road division perform the searches of female inmates. (Jones Dep. at 23–24, 26, 33–35; Roberts Dep. at 102–03.)

According to Defendant Jones, the Jail has a policy prohibiting male inmates from entering the cells of female inmates. (Jones Dep. at 51–52.) The Jail, however, does not have a policy prohibiting sexual activities between inmates. (*Id.* at 51.)

The Jail also has a policy requiring jailers to guard inmates who have been placed in a hospital for treatment. (Jones Dep. at 56.) The jailer assigned to guard an inmate should watch the inmate at all times. (*Id.* at 62.) When a physician examines the inmate, the jailer assigned to guard the inmate should stand outside the door. (*Id.* at 63.) The door, however, should remain open while the examination occurs. (*Id.*)

The Jail provides each female inmate with two rolls of toilet paper each week. (Dep. of Jeremy Battle at 25; Jones Dep. at 134, 152.) If female inmates require additional toilet paper, the Jail requires those inmates to purchase additional toilet paper from the Jail store. (Battle Dep. at 25–26; Jones Dep. at 134, 152.) If female inmates do not have sufficient funds to purchase additional toilet paper, jailers can provide the female inmates with additional toilet paper. (Battle Dep. at 24.)

The Jail store also sold feminine hygiene products. (Battle Dep. at 24.) Female inmates who possessed sufficient funds to purchase female hygiene products were required to purchase those products from the Jail store. (*Id.* at 25–26.) Jailers could provide female hygiene products to female inmates who did not possess sufficient funds to purchase those products. (*Id.* at 25.)

The Jail had a policy prohibiting the use of tobacco products or the possession of such products. (Battle Dep. at 28; Roberts Dep. at 39.) Inmates, however, obtained tobacco products and smoked. (Battle Dep. at 28.)

## H. Procedural History

On December 29, 2000, Plaintiffs filed this lawsuit. Plaintiffs asserted claims for deliberate indifference under the Eighth Amendment, filed pursuant to 42 U.S.C.A. § 1983. (Compl.¶¶ 73–77.) Plaintiff Trotter asserted a claim for wrongful coercion of medical treatment and wrongful death arising under Georgia law. (*Id.* ¶¶ 78–81.) Plaintiffs also asserted claims for intentional infliction of emotional distress and assault and battery arising under Georgia law. (*Id.* ¶¶ 82–88.)

On January 22, 2001, Defendants Christian and Trammel filed a Motion to Strike with respect to certain allegations contained in Plaintiffs' Complaint. On February 22, 2001, the Court denied that Motion. (Order of Feb. 22, 2001.)

On March 22, 2001, the parties moved to substitute Defendant Davis in his official capacity for Defendant Roberts in his official capacity. (Order of Mar. 22, 2001.) On that same day, the Court entered an Order adding Defendant Davis, in his official capacity, as a party to this action, and dismissing Defendant Roberts, in his official capacity, as a party to this action. (*Id.*)

On January 15, 2002, Defendant Gordon County filed its Motion for Summary Judgment. On that same day, Defendants Crider, Gravitt, Johnson, Jones, Roberts, and Davis filed a Motion for Summary Judgment. On that same day, Defendants Bridwell, Highfield, Trammel, and Christian all filed separate Motions for Summary Judgment. All of the Defendants argue that Plaintiffs have failed to create a genuine dispute with respect to any of their claims. The Court first sets forth the general standard governing a motion for summary judgment, and then addresses Defendants' Motions for Summary Judgment in turn.

### III. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In short, everything in the record must demonstrate the absence of a genuine issue of material fact. *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1246 (11th Cir.1999).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog*, 193 F.3d at 1246 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The party requesting summary judgment " 'always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1281 (11th Cir.1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (internal quotation marks omitted). "The movant[ ] can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." *Id.* at 1281–82. "There is no requirement, however, 'that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.' " *Id.* at 1282 (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Graham*, 193 F.3d at 1282; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." *Graham*, 193 F.3d at 1282.

After the non-moving party properly has responded to a proper motion for summary judgment, the Court may grant the motion for summary judgment if the Court concludes that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir.1999). When making this determination, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Hinson v. Edmond*, 192 F.3d 1342, 1348 (11th Cir.1999); *St. Charles Foods, Inc.*, 198 F.3d at 819. The Court also must " 'resolve all reasonable doubts about the facts in favor of the non-movant.' " *St. Charles Foods, Inc.*, 198 F.3d at 819 (quoting *United of Omaha Life Ins. v. Sun Life Ins. Co.*, 894 F.2d 1555 (11th Cir.1990)). Additionally, " '[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.' " *Id.* (quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296–97 (11th Cir.1983)) (alteration in original). Moreover, "credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury." *Graham*, 193 F.3d at 1282. Finally, "[i]f the record presents factual issues, the court must not decide them; it

must deny the motion and proceed to trial." *Herzog,* 193 F.3d at 1246.

When considering motions for summary judgment, the Court does not make decisions as to the merits of disputed factual issues. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ryder Int'l Corp. v. First Am. Nat'l Bank,* 943 F.2d 1521, 1523 (11th Cir.1991). Rather, the Court only determines whether genuine issues of material fact exist to be tried. *Graham,* 193 F.3d at 1282. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Id.* Disputed facts that do not resolve or affect the outcome of a suit properly will not preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In addition to materiality, the Court also must consider the genuineness of the alleged dispute. *Graham,* 193 F.3d at 1282. A dispute is genuine if " 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). The non-movant " 'must do more than show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The standard for summary judgment thus mirrors the "standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Graham,* 193 F.3d at 1283 (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

## IV. Defendant Gordon County's Motion for Summary Judgment

Defendant Gordon County has filed a Motion for Summary Judgment. Defendant Gordon County argues that the individual Defendants are not agents of Defendant Gordon County for purposes of § 1983 liability, that Plaintiffs Trotter and Crowder failed to provide an ante-litem notice with respect to their state law claims, as required by O.C.G.A. § 36–11–1, and that sovereign immunity bars Plaintiffs Trotter and Crowder's state law claims against Defendant Gordon County.

### A. § 1983 Claims

■ "A county may be liable under § 1983 for the actions of its sheriff if the sheriff's actions 'constitute county policy.' " *Fletcher v. Screven County,* 92 F.Supp.2d 1377, 1378 (S.D.Ga.2000) (quoting *McMillian v. Monroe County,* 520 U.S. 781, 783, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)). The parties do not dispute that Defendant Roberts is the policymaker concerning issues pertaining to the Jail. Therefore, to determine whether Defendant Gordon County can be held liable for the actions of Defendant Roberts and his jailers under § 1983, the Court must determine whether Defendant Roberts makes policy for Defendant Gordon County. *Id.* at 1379.

■ Defendant Gordon County argues that, under Georgia law, sheriffs are agents of the state, rather than the county. Consequently, Defendant Gordon County contends that Defendant Roberts cannot establish policy for Defendant Gordon County for purposes of § 1983, and that Defendant Gordon County therefore cannot be held liable under § 1983 for any of the actions taken by Defendant Roberts and the individual Defendants.

The United States Court of Appeals for the Eleventh Circuit recently addressed the issue of whether a Georgia sheriff is an agent of the county for purposes of Elev-

enth Amendment immunity. *Manders v. Lee*, 2002 WL 397221, at \*5, 285 F.3d 983, 993 (11th Cir.2002). In *Manders*, the Eleventh Circuit noted that it was bound by prior panel precedent to treat a Georgia sheriff as an agent of the county, rather than the state, for purposes of Eleventh Amendment immunity. 285 F.3d at 993. The Eleventh Circuit, however, proceeded to question the correctness of its prior panel precedent on this issue, and concluded that "Georgia sheriffs are agents of the state, not counties, when performing their law enforcement duties as to use of force." 285 F.3d at 993.

In concluding that Georgia sheriffs and their jailers are not agents of the counties, the Eleventh Circuit stated:

Although sheriffs are designated "county officers," the Georgia Constitution and Code afford counties no authority, role, or control over (a) sheriff's qualifications, minimum salary, law enforcement powers and duties, (b) the investigation and suspension of sheriffs, or (c) the training, supervision, and discipline of his deputies at the jail. Sheriffs are independent and separate from county boards to such a degree that Georgia courts have held that counties are not liable under state law for the actions of the sheriff or his deputy jailers. Indeed, the state has mandated that sheriffs alone hire and fire their own deputies and jailers.

We recognize that counties set the total amount of sheriffs' budgets and pay sheriffs' salaries, but counties cannot reduce the sheriffs' minimum salaries and cannot dictate how that budget is spent. Counties may waive the sheriffs' sovereign immunity for motor-vehicle claims by purchasing insurance, but Eleventh Amendment precedent now makes clear that insurance or indemnification provided by a third party, such as the county, is not material to whether there is a risk of an adverse judgment or potential legal liability. Counties construct and maintain the county jails and must provide inmates certain necessities, but counties have no authority, role or control over the sheriffs' use-of-force policies at the jail. Thus, on balance, we believe sheriffs are not agents of counties when performing their law enforcement duties as to use of force.

285 F.3d at 1008.

Although the Eleventh Circuit's opinion in *Manders* did not purport to address the issue of whether a Georgia sheriff and his jailers are agents of the county or policymakers for the county for purposes of § 1983 liability, the Court believes that the reasoning of *Manders* clearly indicates that the Eleventh Circuit would conclude that Georgia sheriffs and their jailers are not agents of the counties or policymakers of the counties for purposes of § 1983 liability. *Cf. Fletcher*, 92 F.Supp.2d at 1380 (analyzing provisions of Georgia Constitution and Georgia statutes to determine that Georgia sheriff's conduct in area of law enforcement did not constitute county policy for purposes of § 1983 liability).

Given this authority, the Court concludes that Defendant Roberts is not an agent of Defendant Gordon County for purposes of § 1983 liability and that Defendant Roberts consequently does not establish policy for Defendant Gordon County with respect to the Jail. Defendant Gordon County thus cannot be held liable under § 1983 for the actions of Defendant Roberts or the other Defendants. The Court therefore grants Defendant Gordon County's Motion for Summary Judgment with respect to Plaintiffs' § 1983 claims.[4]

---

4. Plaintiffs argue that the conclusion in *Fletcher* "has rewritten the constitution and laws of the State of Georgia and handed the state government a large class of public officials, namely sheriffs, that it didn't know that it had." (Pls.' Surreply Def. Gordon County's

## B. State Law Claims

Plaintiffs have failed to respond to Defendant Gordon County's arguments with respect to Plaintiffs' state law claims. Plaintiffs therefore have abandoned those claims, and Defendants are entitled to summary judgment on those claims. *Bute v. Schuller Int'l, Inc.,* 998 F.Supp. 1473, 1477 (N.D.Ga.1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); *Welch v. Delta Air Lines, Inc.,* 978 F.Supp. 1133, 1137 (N.D.Ga.1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims.").

## C. Summary

In sum, the Court concludes that the individual Defendants are not agents of Defendant Gordon County for purposes of § 1983 liability. Defendant Gordon County consequently is entitled to summary judgment with respect to Plaintiffs' § 1983 claims asserted against it. The Court also grants summary judgment to Defendant Gordon County with respect to Plaintiffs' state law claims, because Plaintiffs have failed to respond to Defendant Gordon County's arguments with respect to those claims.

## V. Motion for Summary Judgment Filed by Defendants Roberts, Crider, Gravitt, Johnson, Jones, and Davis

Defendants Roberts, Crider, Gravitt, Johnson, Jones, and Davis have filed a Motion for Summary Judgment with respect to Plaintiffs' claims asserted against them in their individual and official capacities. The Motion filed by those Defen-

dants also requests summary judgment with respect to Plaintiffs' claims asserted against all the other individual Defendants in their official capacities.

## A. § 1983 Claims: Individual Capacity

### 1. Defendant Crider

#### a. Plaintiff Trotter

Plaintiff Trotter has produced no evidence in support of any § 1983 claims that Plaintiff Trotter may have intended to assert against Defendant Crider. Defendant Crider therefore is entitled to summary judgment with respect to any § 1983 claims that Plaintiff Trotter may have alleged against Defendant Crider.

#### b. Plaintiff Hammond

Plaintiff Hammond testified that she had sex with Defendant Crider during her 1997 incarceration. A two-year statute of limitations, however, applies to § 1983 claims. *Williams v. City of Atlanta,* 794 F.2d 624, 626 (11th Cir.1986) (noting that Georgia's two-year statute of limitations governing personal injury claims applies to § 1983 actions that originate in Georgia). Because Plaintiff Hammond did not file this lawsuit until December 27, 2000—more than two years after allegedly engaging in sex with Defendant Crider in 1997, this claim is time-barred.

#### c. Plaintiff Crowder

Plaintiff Crowder has testified that in 1996, Defendant Crider displayed his penis to Plaintiff Crowder, asked Plaintiff Crowder to show him her breasts and dance for him, and asked Plaintiff Crowder to en-

---

Mot. Summ. J. at 3–4.) With all due respect to Plaintiffs, the Court fails to see how the Court's decision that Defendant Roberts does not make policy for Defendant Gordon County possibly implicates the Tenth Amendment.

The Court has not "handed the state government a large class of public officials," but simply has noted that Defendant Roberts and his jailers are not agents of Defendant Gordon County for purposes of § 1983 liability.

gage in sex with Ms. Fogel. Any § 1983 claims that Plaintiff Crowder may have arising from those activities, however, are barred by the two-year statute of limitations. *Williams,* 794 F.2d at 626.

### d. Plaintiff Quarles

Plaintiff Quarles has produced no evidence in support of any § 1983 claims that Plaintiff Quarles may have intended to assert against Defendant Crider. Defendants therefore are entitled to summary judgment with respect to any § 1983 claims that Plaintiff Quarles may have alleged against Defendant Crider.

### e. Summary

In sum, the Court finds that the § 1983 claims asserted by Plaintiffs Hammond and Crowder against Defendant Crider are barred by the statute of limitations, and that Plaintiffs have failed to produce evidence in support of their remaining claims against Defendant Crider. The Court therefore grants summary judgment to Defendants with respect to all of the § 1983 claims asserted against Defendant Crider in his individual capacity.[5]

### 2. Defendant Gravitt

Plaintiffs have presented no evidence in support of any § 1983 claims that Plaintiffs may have intended to assert against Defendant Gravitt. Further, to the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Gravitt based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *infra* Part IV.A.5. The Court therefore grants summary judgment to Defendants with respect to any § 1983 claims that Plaintiffs

may have asserted against Defendant Gravitt in his individual capacity.

### 3. Defendant Johnson

### a. Plaintiff Trotter

Plaintiff Trotter has produced evidence indicating that Defendant Johnson asked Plaintiff Trotter to "flash" him in exchange for cigarettes. (Trotter Dep. at 99, 145.) The Court first determines whether this allegation states a constitutional claim, and next addresses whether Defendant Johnson is entitled to qualified immunity for this claim.

### i. Whether Plaintiff Trotter's Allegations State a Constitutional Claim

Plaintiff Trotter appears to assert a claim pursuant to the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishments. *Taylor v. Adams,* 221 F.3d 1254, 1257 (11th Cir.2000), *cert. denied,* 531 U.S. 1077, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001). Actions that "impose the unnecessary and wanton infliction of pain constitute cruel and unusual punishment in violation of the Eighth Amendment." *Carrigan v. Davis,* 70 F.Supp.2d 448, 452 (D.D.C.1999). Under certain circumstances, sexual harassment or sexual abuse of a prisoner may violate the Eighth Amendment. *Freitas v. Ault,* 109 F.3d 1335, 1338 (8th Cir.1997); *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997).

██ To establish an Eighth Amendment claim, a plaintiff must satisfy two requirements. First, the plaintiff must show that the defendant's conduct is objectively serious or caused an objectively serious injury to the plaintiff. *Farmer v. Brennan,* 511

---

**5.** To the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Crider based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *infra* Part IV.A.5.

U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, the plaintiff must show that the prison official acted with a " 'sufficien[tly] culpable state of mind,' " or with deliberate indifference to or reckless disregard for the plaintiff's constitutional rights, health, or safety. *Id.* at 834, 847, 114 S.Ct. 1970.

"The first element of the deliberate indifference standard is an objective element." *Carrigan,* 70 F.Supp.2d at 452. "A prison official's conduct is 'objectively serious' under the Eighth Amendment if it is incompatible with 'contemporary standards of decency.' " *Id.* (quoting *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)).

"The second element of the deliberate indifference standard is a subjective element." *Carrigan,* 70 F.Supp.2d at 452. To satisfy this element, a prison official must act with " 'a sufficiently culpable state of mind' ", or with deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer,* 511 U.S. at 825, 114 S.Ct. 1970 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir.1998). A prison official acts with a sufficiently culpable state of mind where the prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. If no legitimate law enforcement purpose or penalogical purpose can be inferred from the officer's conduct, the conduct itself can be sufficient evidence of a culpable mind. *Carrigan,* 70 F.Supp.2d at 454.

■ Here, Plaintiff Trotter has presented evidence indicating that Defendant Johnson asked Plaintiff Trotter, on one occasion, to "flash" him in exchange for cigarettes. This allegation amounts merely to a claim of verbal harassment, and does not state an Eighth Amendment claim for sexual harassment. *Barney,* 143

F.3d at 1311 n. 11 (noting "acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment"); *Adkins v. Rodriguez,* 59 F.3d 1034, 1037 (10th Cir.1995) (same). Plaintiff Trotter's allegations against Defendant Johnson thus do not present a constitutional claim.

#### ii. Whether Defendant Johnson Is Entitled to Qualified Immunity

Defendant Johnson also has asserted the defense of qualified immunity with respect to Plaintiff Trotter's claim asserted against him. The Court first sets forth the general standard governing qualified immunity in the Eleventh Circuit, and then applies that standard to Plaintiff Trotter's claim.

#### aa. General Standard Governing Qualified Immunity

The doctrine of qualified immunity protects government officials performing discretionary functions from suits for damages brought against them in their individual capacities. *Stanley v. City of Dalton,* 219 F.3d 1280, 1285 (11th Cir. 2000); *see also Santamorena v. Georgia Military Coll.,* 147 F.3d 1337, 1339 (11th Cir.1998) (" '[q]ualified immunity protects government officials performing discretionary functions from civil trials ... and from liability' ") (quoting *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc)).

■ The Eleventh Circuit applies a two-part analysis to determine whether a government official is entitled to qualified immunity. *Maggio v. Sipple,* 211 F.3d 1346, 1350 (11th Cir.2000); *see also Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir.1998). First, the governmental official must prove that the allegedly unconstitutional conduct occurred while the official was acting with the scope of his discretionary authority. *Maggio,* 211 F.3d

at 1350. A government actor's discretionary authority encompasses all actions that: (1) were undertaken pursuant to the performance of his duties; and (2) were within the scope of the actor's authority. *Harbert Int'l, Inc.,* 157 F.3d at 1281. The government official may not satisfy this burden merely by making " '[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties.' " *Id.* (quoting *Espanola Way Corp. v. Meyerson,* 690 F.2d 827, 830 (11th Cir.1982)). Instead, the government official must make " 'a showing by competent summary judgment materials of objective circumstances that would compel that conclusion.' " *Id.* (quoting *Barker v. Norman,* 651 F.2d 1107, 1124–25 (5th Cir. 1981)).

The showing, however, is not a difficult one to make "because of the level of generality at which this requirement must be interpreted." *Sweatt v. Bailey,* 876 F.Supp. 1571, 1576 (M.D.Ala.1995). For example, the inquiry focuses on whether a police officer's act of *subduing an arrestee* falls within the scope of the officer's authority, not whether the officer's *alleged use of excessive force* while subduing the arrestee falls within the scope of the officer's authority. *Id.; see also Harbert Int'l,* 157 F.3d at 1282 (noting that the discretionary authority inquiry "is not whether it was within the defendant's authority to commit the allegedly illegal act"). Instead, the Court must ask " 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.' " *Maggio,* 211 F.3d at 1351 (quoting *Harbert Int'l,* 157 F.3d at 1282) (internal quotation marks omitted). The alleged unconstitutional conduct is "more properly considered in the second step of the [qualified immunity] test[,] where the court examines the actual conduct of the officer to see if the specific situation is governed by clearly

established law." *Sweatt,* 876 F.Supp. at 1576.

■ Once the defendant shows that he acted within his discretionary authority, the burden shifts to the plaintiff to demonstrate that the defendant violated "clearly established law." *Maggio,* 211 F.3d at 1350. To discharge this burden, the plaintiff must establish that (1) " 'the plaintiff has alleged the deprivation of a constitutional right' "; and (2) at the time of the alleged violation, that right was "clearly established," that is, that a reasonable government official would have been aware of the right. *Stanley,* 219 F.3d at 1285 (quoting *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)) (internal quotation marks omitted). If the plaintiff fails to make either of those showings, then the defendant is entitled to qualified immunity. *Taylor v. Adams,* 221 F.3d 1254, 1257 (11th Cir.2000), *cert. denied,* 531 U.S. 1077, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001); *see also Stanley,* 219 F.3d at 1285 (" 'If a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a clearly established right.' ") (quoting *GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir.1998)) (internal quotation marks omitted).

To establish that, at the time of the alleged violation, the right at issue was "clearly established," the plaintiff must show that the relevant law has "earlier been developed in such a concrete and *factually defined* context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter,* 28 F.3d at 1150; *see also Denno v. School Bd. of Volusia County,* 218 F.3d 1267, 1270 (11th Cir.) (quoting *Lassiter,* 28 F.3d at 1150), *cert. denied,* 531 U.S. 958, 121 S.Ct.

382, 148 L.Ed.2d 295 (2000). Merely setting forth general principles of law or abstract rights "will seldom if ever suffice to strip a defendant of qualified immunity." *Harbert Int'l*, 157 F.3d at 1284. Instead, the plaintiff must point to authority that "pre-date[s] the offic[ial's] alleged improper conduct, involve[s] materially similar facts, and 'truly compel[s]' the conclusion that the plaintiff had a right under federal law." *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir.1998) (citing *Lassiter*, 28 F.3d at 1150). The Eleventh Circuit has noted that "only the [United States] Supreme Court, the Eleventh Circuit Court of Appeals, or the highest court of the state from which a case arose may 'clearly establish' rights under federal law for this circuit." *Ensley*, 142 F.3d at 1407 n. 5; *see also Marsh v. Butler County*, 268 F.3d 1014, 1033 n. 10 (11th Cir.2001) (en banc) ("When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Appeals for the Eleventh Circuit, and the highest court of the pertinent state.").

The Eleventh Circuit has acknowledged that "preexisting case law, tied to the precise facts, is not in every situation essential to establish clearly the law applying to the circumstances facing a public official so that a reasonable official would be put on fair and clear notice that specific conduct would be unlawful in the faced, specified circumstances." *Marsh*, 268 F.3d at 1032 n. 9 (en banc). Indeed, "some conduct is so obviously contrary to constitutional norms that even in the absence of caselaw, the defense of qualified immunity does not apply." *Skrtich v. Thornton*, 280 F.3d 1295, 1305 n. 9 (11th Cir.2002).

### bb. Application to Plaintiff Trotter's Claim

■ Defendant Johnson has presented evidence indicating that his duties as a deputy jailer included supervising the control, movement, and housing of inmates. (Def. Bridwell's Mot. Summ. J. Ex. E.) Defendant Johnson thus has established that he acted within his discretionary authority for purposes of the qualified immunity analysis.

The Court next must determine whether Plaintiff Trotter has alleged the violation of a constitutional right. For the reasons stated *supra* Part IV.A.3.a.i., Plaintiff Trotter has not shown that Defendant Johnson violated Plaintiff Trotter's constitutional rights. Defendant Johnson thus is entitled to qualified immunity. *Stanley*, 219 F.3d at 1285.

Finally, the Court must determine whether Plaintiff Trotter has demonstrated that Defendant Johnson's actions violated clearly established law. As discussed above, Plaintiff Trotter has not shown that Defendant Johnson violated Plaintiff Trotter's constitutional rights. Further, Plaintiff Trotter has pointed to no case from the United States Supreme Court, the Eleventh Circuit, or the Supreme Court of Georgia that would have put a reasonable officer in Defendant Johnson's position on notice that his conduct was unacceptable. The Court's own research has uncovered no such authority, and the Court cannot say that Defendant Johnson's conduct in asking Plaintiff Trotter to "flash" him in exchange for cigarettes "is so obviously contrary to constitutional norms" that the qualified immunity defense does not apply. *Skrtich*, 280 F.3d at 1305 n. 9. Defendant Johnson thus is entitled to qualified immunity with respect to Plaintiff Trotter's claim asserted against him.

### b. Plaintiff Hammond

Plaintiff Hammond has presented evidence indicating that Defendant Johnson asked Plaintiff Hammond to strip and to engage in oral sex with another female inmate in exchange for cigarettes, and that

Plaintiff Hammond willingly engaged in those activities. (Hammond Dep. at 119, 132–33.) Plaintiff Hammond also has adduced evidence indicating that Defendant Johnson displayed his penis to Plaintiff Hammond and other inmates. (*Id.* at 120.) Once again, the Court first must determine whether Plaintiff Hammond has alleged a constitutional claim against Defendant Johnson. The Court then will address whether the qualified immunity defense protects Defendant Johnson with respect to those allegations.

### i. Whether Plaintiff Hammond's Allegations State a Constitutional Claim

Plaintiff Hammond apparently asserts an Eighth Amendment claim against Defendant Johnson based on Defendant Johnson's conduct. As discussed *supra* Part IV.A.3.a.i., sexual harassment or

abuse of a prisoner may violate the Eighth Amendment.

The Court finds that Plaintiff Hammond's evidence is sufficient to support a claim under the Eighth Amendment. Plaintiff Hammond's evidence, viewed in the light most favorable to Plaintiff Hammond, indicates that Defendant Johnson instructed Plaintiff Hammond to strip in exchange for cigarettes on more than one occasion, instructed Plaintiff Hammond to engage in oral sex with an inmate in exchange for cigarettes on at least one occasion, and exposed his penis to Plaintiff Hammond on one occasion. The Court finds that this evidence is " 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Boddie*, 105 F.3d at 861.[6] Plaintiff Hammond therefore has established the first element of the Eighth Amendment test.

---

**6.** Defendants argue that Plaintiff Hammond cannot state an Eighth Amendment claim because Plaintiff Hammond voluntarily stripped and engaged in oral sex. In support of this argument, Defendants cite *Freitas v. Ault*, 109 F.3d 1335 (8th Cir.1997) and this Court's decision in *Gowan v. Carney*, Civ. A. No. 4:95–CV–0283–HLM, 1996 WL 735567 (N.D.Ga. Oct. 10, 1996). The Court finds that both cases are distinguishable.

In *Freitas*, the United States Court of Appeals for the Eighth Circuit found that an inmate had not established that the actions of a correctional officer had caused the inmate pain. 109 F.3d at 1338–39. The Eighth Circuit noted that the inmate had voluntarily engaged in the conduct of which he complained, and that the inmate therefore had not established the objective component of his Eighth Amendment claim. *Id.* at 1339.

For two reasons, the Court declines to follow the approach adopted by the *Freitas* court. First, the allegations of sexual misconduct in *Freitas* simply are not as extreme as the evidence of sexual misconduct involved in this case. *See id.* at 1336 (describing conduct of parties: plaintiff and correctional officer met in secluded areas of prison and hugged, kissed, and talked; plaintiff wrote "hot sexy"

letters to correctional officer; and correctional officer occasionally dressed in tight skirts and high heels for plaintiff's benefit). Second, the Georgia legislature has indicated that an inmate may not consent to certain sexual conduct. *See* O.C.G.A. § 16–6–5.1 (providing criminal penalties for sexual contact between certain classes of individuals, including prison guards and prisoners, and indicating that consent is no defense). Under these circumstances, the Court declines to rely upon *Freitas* to bar Plaintiff Hammond's claims.

In *Gowan*, this Court concluded that a plaintiff had not established a Fourth Amendment claim for violation of his substantive due process right to bodily integrity based on his human services technician's sexually-related conduct. 1996 WL 735567, at *5. The Court based its ruling on the fact that the conduct between the plaintiff and his technician was consensual. *Id.*

The Court finds that *Gowan* is inapplicable to this case for three reasons. First, *Gowan* did not involve an Eighth Amendment claim. Second, the plaintiff in *Gowan* was not in custody. Third, the parties in *Gowan* did not raise the argument that O.C.G.A. § 16–6–5.1 somehow applied to the case.

The Court next addresses the second element of the Eighth Amendment test. "Courts considering Eighth Amendment claims involving sexual conduct between prison guards and inmates have repeatedly recognized that such conduct serves no legitimate law enforcement or penological purpose." *Carrigan,* 70 F.Supp.2d at 454. The Court "can conceive of no legitimate penalogical purpose that is served" by conduct involving inmates engaging in oral sex with other inmates or stripping in exchange for cigarettes. *Id.* Indeed, the Court believes that such conduct "destabilizes the prison environment by compromising the control and authority of the guard over the inmate, compromising the inmate's health, security, and well-being and creating tensions and conflicts among the inmates themselves." *Id.* Under these circumstances, the conduct at issue is sufficient evidence, in and of itself, of Defendant Johnson's culpable state of mind. *Id.* at 455. Plaintiff Hammond thus has established the subjective element of her Eighth Amendment claim.

For the reasons discussed above, the Court concludes that Plaintiff Hammond has presented sufficient evidence to establish both elements of her Eighth Amendment claim against Defendant Johnson. The Court next must determine whether Defendant Johnson is entitled to qualified immunity.

### ii. Whether Defendant Johnson Is Entitled to Qualified Immunity

■ The Court applies the standard discussed *supra* Part IV.A.3.a.ii. when determining whether Defendant Johnson is entitled to qualified immunity with respect to Plaintiff Hammond's claims asserted against him in his official capacity. For the reasons discussed *supra* Part IV. A.3.a.ii.bb., the Court concludes that Defendant Johnson has presented sufficient evidence to show that he acted within his discretionary authority. (Def. Bridwell's Mot. Summ. J. Ex. E.) The Court therefore must determine whether Defendant Johnson's conduct violates clearly established law.

Plaintiff Hammond has pointed to no clearly established authority indicating that a jailer acts unlawfully by instructing inmates to strip and engage in oral sex in exchange for cigarettes and by exposing his penis to female inmates. The Court's own research also has uncovered no such authority. The Court concludes, however, that this situation is one of those rare instances in which a defendant's conduct "is so obviously contrary to constitutional norms that even in the absence of caselaw, the defense of qualified immunity does not apply." *Skrtich,* 280 F.3d at 1305 n. 9. It certainly should be obvious to any reasonable jailer in Defendant Johnson's position that it is unlawful to instruct inmates under one's supervision to strip in exchange for cigarettes or to engage in oral sex with one another in exchange for cigarettes. The Court therefore denies qualified immunity to Defendant Johnson with respect to this claim.

### iii. Summary

In sum, the Court concludes that Plaintiff Hammond has presented sufficient evidence to create a genuine dispute with respect to both elements of her Eighth Amendment claim asserted against Defendant Johnson. The Court also finds that Defendant Johnson is not entitled to qualified immunity with respect to that claim. Consequently, the Court denies the Motion for Summary Judgment with respect to this claim.

### c. Plaintiff Crowder

Plaintiff Crowder has testified that Defendant Johnson required Plaintiff Crowder to "flash" him in exchange for toilet paper and feminine hygiene products.

(Crowder Dep. at 99, 104–06, 122.) Plaintiff Crowder also has testified that Defendant Johnson penetrated Plaintiff Crowder's vagina with his fingers, and that Plaintiff Crowder did not consent to this contact. (*Id.* at 29–31, 53–56.) The Court first determines whether Plaintiff Crowder has established an Eighth Amendment claim, and next addresses the defense of qualified immunity with respect to that claim.

### i. Whether Plaintiff Crowder Has Established an Eighth Amendment Claim

 For the reasons discussed *supra* Parts IV.A.3.a.i. and b.i., the Court concludes that Plaintiff Crowder has produced sufficient evidence to satisfy both elements of her Eighth Amendment claim. First, Plaintiff Crowder has submitted evidence that Defendant Johnson required Plaintiff Crowder to strip or to "flash" her breasts in exchange for toilet paper and feminine hygiene products, and that Defendant Johnson used his fingers to penetrate Plaintiff Crowder's vagina. The Court finds that this evidence is " 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Boddie*, 105 F.3d at 861. Plaintiff Crowder thus has satisfied the first element of her Eighth Amendment claim.[7]

The Court also concludes that Plaintiff Crowder has established the second element of her Eighth Amendment claim. The Court can conceive of no legitimate, penalogical purpose that possibly could be served by requiring an inmate to strip in order to receive toilet paper or feminine hygiene products. The Court is at even more of a loss to arrive at some possible

penalogical purpose for a guard's decision to penetrate a female inmate's vagina with his fingers. In any event, the latter action is prohibited by a Georgia criminal statute, O.C.G.A. § 16–6–5.1, and, consequently, is "contrary to the goals of law enforcement." *Carrigan*, 70 F.Supp.2d at 454. Under these circumstances, the conduct at issue is sufficient evidence, in and of itself, of Defendant Johnson's culpable state of mind. *Id.* at 455. Plaintiff Crowder thus has established the second element of the Eighth Amendment test.

### ii. Whether Defendant Johnson Is Entitled to Qualified Immunity

 The Court next must determine whether Defendant Johnson is entitled to qualified immunity with respect to Plaintiff Crowder's claims. Once again, the Court applies the standard discussed *supra* Part IV.A.3.a.ii.aa.

For the reasons stated *supra* Part IV.A.3.a.ii.bb., Defendant Johnson has established that he acted within his discretionary authority when he took the actions of which Plaintiff Crowder complains. (Def. Bridwell's Mot. Summ. J. Ex. E.) The Court therefore must determine whether Defendant Johnson's actions violated clearly established law.

Plaintiff Crowder has pointed to no clearly established authority indicating that a jailer acts unlawfully by instructing inmates to strip or "flash" their breasts in exchange for toilet paper or feminine hygiene products or by penetrating an inmate's vagina with his fingers. The Court's own research also has uncovered no such authority. The Court concludes, however, that this situation is one of those

---

**7.** For the reasons discussed *supra* Note 6, the Court finds that Defendant Johnson's argument that Plaintiff Crowder voluntarily stripped or "flashed" him is without merit. The Court further observes that Defendants'

argument that inmates could avoid having to strip or "flash" for toilet paper or feminine supplies by purchasing those items from the Jail store fails to pass the "straight-face" test.

rare instances in which a defendant's conduct "is so obviously contrary to constitutional norms that even in the absence of caselaw, the defense of qualified immunity does not apply." *Skrtich*, 280 F.3d at 1305 n. 9. Indeed, the Court cannot conceive how a reasonable jailer in Defendant Johnson's position could not have understood that instructing inmates to strip or to "flash" their breasts in exchange for necessities such as toilet paper and feminine hygiene products, or penetrating an inmate's vagina with one's fingers, was unlawful. The Court therefore denies qualified immunity with respect to this claim.

### iii. Summary

In sum, the Court concludes that Plaintiff Crowder has produced sufficient evidence to state an Eighth Amendment claim against Defendant Johnson. Qualified immunity also does not protect Defendant Johnson with respect to this claim. Defendant Johnson therefore is not entitled to summary judgment with respect to this claim.

### d. Plaintiff Quarles

Plaintiff Quarles has adduced no evidence in support of any § 1983 claims that Plaintiff Quarles may have intended to assert against Defendant Johnson. Defendant Johnson thus is entitled to summary judgment for those claims.

### e. Summary

The Court concludes that summary judgment is not appropriate with respect to the Eighth Amendment claims asserted by Plaintiffs Hammond and Crowder against Defendant Johnson in his individual capacity. The Court, however, grants summary judgment with respect to all other § 1983 claims asserted by Plaintiffs against Defendant Johnson in his individual capacity.[8]

### 4. Defendant Davis

Plaintiffs have stated that they have not sued Defendant Davis in his individual capacity. (Pls.' Br. Supp. Resp. Other Defs.' Mots. Summ. J. at 2–3 n. 1.) Defendant Davis thus is not subject to liability for any § 1983 claims asserted against him in his individual capacity.

### 5. Defendant Roberts and Defendant Jones

Plaintiffs have not presented evidence indicating that Defendant Roberts and Defendant Jones were involved in any of the activities of which Plaintiffs complain. Instead, Plaintiffs allege that Defendants Roberts and Jones failed to take sufficient measures to protect Plaintiffs from the conduct of which Plaintiffs complain. Presumably, Plaintiffs' claims proceed under the Eighth Amendment.

The Eighth Amendment imposes duties on prison officials to " 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer*, 511 U.S. at 832, 114 S.Ct. 1970 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Marsh*, 268 F.3d at 1028. A prison official violates the Eighth Amendment when "a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[ ] reasonably to the risk.' " *Id.* (quoting *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970.) A plaintiff asserting an Eighth Amendment claim based on

---

**8.** To the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Johnson based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *infra* Part IV.A.5.

deliberate indifference to a known risk of harm also must show that the constitutional violation caused her injuries. *Id.*

To establish an Eighth Amendment claim based on deliberate indifference to a known risk of harm, a plaintiff must prove: (1) the existence of "an objectively substantial risk of serious harm to prisoners"; and (2) the official reacted "to this risk in an objectively unreasonable manner." *Marsh,* 268 F.3d at 1028–29. These elements form the objective prong of an Eighth Amendment violation based on deliberate indifference to a known risk of harm. *Id.*

An Eighth Amendment claim based on deliberate indifference to a known risk of harm also has a subjective prong. *Marsh,* 268 F.3d at 1029. To satisfy the subjective prong of an Eighth Amendment violation based on deliberate indifference to a known risk of harm, a plaintiff must show that the prison official knew of and disregarded an excessive risk to inmates' health or safety. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Even if the official knew of and disregarded a substantial risk to inmate safety, the official "may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S.Ct. 1970.

Plaintiffs have presented evidence indicating that: (1) jailers and inmates engaged in sexual relationships with one another (Hammond Dep. at 48, 50, 56, 66–68; Trotter Dep. at 35–38, 40–41, 46–48, 75–76; Crowder Dep. at 13–14, 79–80, 96; Christian Dep. at 24, 28); (2) jailers instructed female inmates to "flash" the jailers, strip before the jailers, or engage in oral sex with one another in exchange for cigarettes, toilet paper, or feminine hygiene products (Trotter Dep. at 144–45; Hammond Dep. at 40, 72, 99, 119, 130–35; Crowder Dep. At 9, 70–72, 104–06, 122; Quarles Dep. at 11, 37–40); (3) male and female inmates engaged in sexual relationships with one another (Hammond Dep. at 38, 41–42, 45–46, 54–55, 59–61, 65); (4) jailers opened cell doors for male inmates or other jailers to allow access to female inmates (Hammond Dep. at 46, 24–25, 59–60; Christian Dep. at 75; Bridwell Dep. at 32, 65, 76); (5) male trusties were allowed at least some type of access to female cells (Christian Dep. at 42); (6) most jailers were provided with no formal training concerning sexual harassment of inmates or proper contact with inmates (Christian Dep. at 66, 74; Highfield Dep. at 19; Trammel Dep. at 63; Jones Dep. at 92); (7) the Jail had no formal policy forbidding sexual contact between jailers and inmates or between inmates (Johnson Dep. at 44; Jones Dep. at 169); (8) jailers did not receive sufficient supervision, and essentially did as they pleased (Bridwell Dep. at 27); (9) a history of complaints involving sexual relationships between jailers and inmates and sexual misconduct existed at the Jail (Roberts Dep. Pls.' Ex. 29; Roberts Dep. at 22–23); and (10) at least two previous investigations had occurred concerning complaints of sexual misconduct at the Jail (Roberts Dep. Pls.' Ex. 29; Roberts Dep. at 14–15, 37). The Court finds that this evidence satisfies the objective prong of an Eighth Amendment claim based on deliberate indifference to a known risk of harm. *See Marsh,* 268 F.3d at 1029 (concluding plaintiffs' allegations were sufficient to satisfy objective prong of Eighth Amendment claim for deliberate indifference to a known risk of harm: plaintiffs alleged that jail lacked segregation policy, jail housed more prisoners than cells could accommodate, jail was routinely understaffed, guards made no head counts of prisoners, locks on cell doors were not functional, homemade weapons were readi-

ly available, no lock down of prisoners occurred, guards did not visually inspect cells, no jailer was assigned to maintain security on floor where most of inmates were housed, jail was not operated in accordance with written policies, inmates were not screened for mental health, medical conditions, or conflicts with other inmates, and prisoners were not disciplined or segregated when they tried to escape, threatened jailers, destroyed property, or assaulted other inmates).

Plaintiffs also have presented sufficient evidence to satisfy the subjective prong of their Eighth Amendment claim based on deliberate indifference to a known risk of harm. Defendants Roberts and Jones were aware of a history of complaints about sexual misconduct at the Jail; however, Defendants Roberts and Jones took virtually no steps to correct the existing situation or to ensure that such a situation did not present itself again. (Roberts Dep. Pls.' Ex. 29.) In particular, Defendants Roberts and Jones failed to institute any type of policy governing sexual harassment of inmates by jailers, sexual contact between inmates and jailers, or sexual contact between inmates, and failed to provide jailers with any formal training relevant to

those issues. (Johnson Dep. at 44, 51, 92, 104; Jones Dep. at 169; Christian Dep. at 66, 74; Highfield Dep. at 19; Trammel Dep. at 63, 107.) Under these circumstances, Plaintiffs have presented sufficient evidence to satisfy the subjective prong of their Eighth Amendment claim against Defendants Roberts and Jones. *See Marsh*, 268 F.3d at 1029 (finding plaintiffs had alleged Eighth Amendment claim based on deliberate indifference to a known risk of harm where plaintiffs alleged that sheriff "did absolutely nothing to alleviate the conditions at the Jail, despite repeated warnings and recommendations for how conditions could be improved").

Further, the Court cannot conclude that a causal connection does not exist between the conduct of Defendants Roberts and Jones and the alleged constitutional deprivations. Viewed in the light most favorable to Plaintiffs, the evidence indicates that the conditions at the Jail caused the harm of which Plaintiffs complain. Plaintiffs therefore have presented sufficient evidence to create a genuine dispute with respect to their Eighth Amendment claims asserted against Defendants Roberts and Jones.[9]

9. Defendants appear to argue that no training concerning the impropriety of the alleged conduct was necessary because the proper response to the situation was obvious, even without training or supervision. *See Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir.1997) (" 'Where the proper response ... is obvious to all without training or supervision, then the failure to train or supervise is generally not so likely to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.' ") (quoting *Walker v. City of New York*, 974 F.2d 293, 299–300 (2d Cir.1992)) (omission in original) (internal quotation marks omitted). While the Court agrees that it should be "obvious to all" that it is improper to engage in sex with an inmate, to molest an inmate, to allow inmates to have sex with one another, or to require inmates to

reveal their bodies or engage in oral sex in exchange for things such as cigarettes, feminine hygiene products, or toilet paper, *Walker* indicates that the analysis cannot stop there. Although it is reasonable for Defendants Roberts and Jones to assume that their jailers have some common sense, "where there is a history of conduct rendering this assumption untenable," Defendants Roberts and Jones "may display deliberate indifference" by relying on the common sense of their jailers, rather than taking corrective measures. *Walker*, 974 F.2d at 300. Here, as previously discussed, a history of inappropriate sexual contact between jailers and inmates existed at the jail. Consequently, Defendants Roberts and Jones may not prevail on summary judgment simply by arguing that training or supervision are not required for jailers to know

### b. Qualified Immunity

Defendants Roberts and Jones have asserted the defense of qualified immunity with respect to Plaintiffs' claims. The Court applies the analysis set forth *supra* Part III.A.3.a.ii. when determining whether qualified immunity protects Defendants Roberts and Jones.

 The Court first examines whether Defendants Roberts and Jones acted within their discretionary authority when they engaged in the behavior of which Plaintiffs complain. The evidence in the record indicates that Defendant Roberts' responsibilities included supervising the Jail, managing and hiring staff, and providing for the care of inmates. (Roberts Dep. at 18, 187.) Defendant Jones, as the Jail administrator, was responsible for "the care and custody of inmates, the operation of the Jail and the management of staff." (Def. Bridwell's Mot. Summ. J. Ex. E.) Defendants Roberts and Jones therefore acted within their discretionary authority when they engaged in the behavior of which Plaintiffs complain.

The Court next must determine whether Plaintiffs have demonstrated that the actions of Defendant Roberts and Defendant Jones violated clearly established law. To support their contention that the conduct of Defendants Roberts and Jones violated clearly established law, Plaintiffs simply point to cases discussing general deliberate indifference principles. Plaintiffs, however, "cannot avoid the qualified immunity defense 'by referring to general rules and to the violation of abstract rights.'" *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir.2001) (quoting *Lassiter*, 28 F.3d at 1150) (internal quotation marks omitted). The Court has located no cases from the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court that predate the activities giving rise to this action and that would have given Defendants Roberts and Jones notice that their actions were unlawful. The Court also cannot determine, as a matter of law, Defendants Roberts and Jones' actions were "so obviously contrary to constitutional norms" so as to preclude qualified immunity even in the absence of case law. *Skrtich*, 280 F.3d at 1305 n. 9; *see also Marsh*, 268 F.3d at 1032 n. 9 ("Especially where the applicable legal standard is a highly general one, such as 'to act reasonably' or 'to act with probable cause,' preexisting case law, that has applied the general law to specific circumstances, will almost always be necessary to draw the bright line that is capable of honestly giving fair and clear notice that an official's conduct will violate federal law.") (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Defendants Roberts and Jones therefore are entitled to qualified immunity with respect to this claim.

### 6. Defendant Duncan

Plaintiff Crowder has testified that she had sex with Defendant Duncan in 1996. Once again, the two-year statute of limitations would bar any § 1983 claims arising from those activities. *Williams*, 794 F.2d at 626. Defendants therefore are entitled to summary judgment for those claims.[10]

### 7. Defendant Vaughn

Plaintiff Crowder testified that she had sex with Defendant Vaughn in 1996. The two-year statute of limitations, however, would bar any § 1983 claims arising from

---

that the conduct underlying this action is inappropriate.

**10.** To the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Duncan based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *supra* Part IV.A.5.

those activities. *Williams*, 794 F.2d at 626. The Court therefore grants summary judgment to Defendants for those claims.[11]

#### 8. Defendant Battle

Plaintiffs have produced no evidence in support of any § 1983 claims that Plaintiffs may have intended to assert against Defendant Battle. Defendant Battle therefore is entitled to summary judgment with respect to any § 1983 claims that Plaintiff Quarles may have alleged against Defendant Battle.[12]

### B. § 1983 Claims: Official Capacity

A suit against an official in his official capacity is deemed to be a suit against the entity the official represents. *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (per curiam). A suit against the Defendants in their official capacities thus is the functional equivalent of suing Defendant Gordon County. *Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1322 n. 14 (11th Cir.2000); *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir.1999), *cert. denied*, 529 U.S. 1115, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000). A plaintiff seeking to impose liability on a governmental entity or municipality under § 1983 must identify a governmental or municipal policy or custom that caused Plaintiff's injury. *Wayne*, 197 F.3d at 1105; *Brown*, 188 F.3d at 1290.

For the reasons discussed *supra* Part III.A., Defendant Roberts and the individual jailers are not policymakers of Defendant Gordon County, and are not agents of Defendant Gordon County, for purposes of § 1983 liability. Plaintiffs thus cannot hold Defendant Gordon County liable for the actions of the individual Defendants in this case, and Plaintiffs' claims asserted against the individual Defendants in their official capacities must fail.

### C. State Law Claims

#### 1. Plaintiff Crowder's Intentional Infliction of Emotional Distress Claim Asserted Against Defendant Johnson [13]

Plaintiff Crowder also asserts an intentional infliction of emotional distress claim against Defendant Johnson, apparently based on Defendant Johnson's alleged actions in penetrating Plaintiff Crowder's vagina with his fingers. Under Georgia law, a plaintiff asserting a claim for intentional infliction of emotional distress must prove: (1) the defendant engaged in intentional or reckless conduct; (2) the conduct was extreme and outrageous; (3) the conduct caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Trimble v. Circuit City Stores*, 220

---

**11.** To the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Vaughn based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *supra* Part IV.A.5.

**12.** To the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Battle based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *supra* Part IV.A.5.

**13.** Defendants apparently argue that Plaintiff Crowder's failure to file an ante litem notice bars Plaintiff Crowder's state law claims asserted against Defendant Johnson. To the extent that Plaintiff Crowder seeks to hold Defendant Johnson *individually* liable for her state law claims, Plaintiff Crowder's failure to file an ante litem notice would not bar those claims. O.C.G.A. § 36–11–1 (setting forth ante litem notice requirement for claims against counties); *Strickland v. Wilson*, 205 Ga.App. 91, 93–94, 421 S.E.2d 94, 96–97 (1992) (noting ante litem notice requirement of O.C.G.A. § 36–11–1 would not bar claim that sought to hold government official personally liable).

Ga.App. 498, 499, 469 S.E.2d 776, 778 (1996).

To support a claim for intentional infliction of emotional distress, the defendant's conduct " 'must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Martin v. North Am. Van Lines,* 226 Ga.App. 187, 190, 485 S.E.2d 815, 818 (1997) (quoting *Turnbull v. Northside Hosp.,* 220 Ga.App. 883, 884, 470 S.E.2d 464) (1996). " 'Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.' " 226 Ga.App. at 190, 485 S.E.2d at 818–19 (quoting *Vidrine v. American Prof'l Credit,* 223 Ga.App. 357, 360, 477 S.E.2d 602 (1996)).

The Court concludes that the evidence presented by Plaintiff Crowder—that Defendant Johnson sexually assaulted Plaintiff Crowder—is sufficient to create a genuine dispute with respect to all the elements of Plaintiff Crowder's claim for intentional infliction of emotional distress asserted against Defendant Johnson. *See Simon v. Morehouse Sch. of Med.,* 908 F.Supp. 959, 972 (N.D.Ga.1995) (noting evidence of sexual assault and sexual advances was sufficient to prove outrageous and extreme conduct for purposes of intentional infliction of emotional distress claim).

▆ Defendant Johnson has asserted the defense of official immunity with respect to Plaintiff Crowder's claim for intentional infliction of emotional distress. Under Georgia law, "[a] suit against a public officer acting in his or her official capacity will be barred by official immunity unless the public officer (1) negligently performed a ministerial duty, or (2) acted with actual malice or an actual intent to cause injury while performing a discretionary duty." *Wanless v. Tatum,* 244 Ga.

App. 882, 882, 536 S.E.2d 308, 309 (2000). "The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review [of] his or her judgment in hindsight." *Cameron v. Lang,* 274 Ga. 122, 123, 549 S.E.2d 341, 344 (2001).

For purposes of this analysis, the Court presumes that Defendant Johnson was performing a discretionary duty at the time that Defendant Johnson took the actions of which Plaintiff Crowder complains. Even if Defendant Johnson was performing a discretionary duty, a reasonable jury could infer that Defendant Johnson acted with actual malice or intent to cause harm when he penetrated Plaintiff Crowder's vagina with his fingers. *Gardner v. Rogers,* 224 Ga.App. 165, 169, 480 S.E.2d 217, 221 (1996) (denying official immunity for assault and battery claim). The Court therefore denies summary judgment to Defendants with respect to Plaintiff Crowder's claim for intentional infliction of emotional distress asserted against Defendant Johnson.

**2. Plaintiff Crowder's Assault and Battery Claim Asserted Against Defendant Johnson**

▆ Plaintiff Crowder also has asserted an assault and battery claim against Defendant Johnson, apparently based on Defendant Johnson's conduct in penetrating Plaintiff Crowder's vagina with his fingers. Plaintiff Crowder has presented sufficient evidence to establish an assault claim against Defendant Johnson, as a jury could conclude that Defendant Johnson's conduct was unjustified and placed Plaintiff Crowder in fear of an imminent physical contact. *Gardner,* 224 Ga.App. at 169, 480 S.E.2d at 221. Plaintiff Crowder also has adduced sufficient evidence to establish a battery claim against Defendant Johnson, as the evidence in the record,

viewed in the light most favorable to Plaintiff Crowder, indicates that Defendant Johnson improperly touched Plaintiff Crowder. 224 Ga.App. at 169, 480 S.E.2d at 221.

 Defendant Johnson argues that he is entitled to official immunity with respect to Plaintiff Crowder's assault and battery claim. A reasonable jury, however, could conclude that Defendant Johnson acted with actual malice or intent to cause harm when he penetrated Plaintiff Crowder's vagina with his fingers. *Gardner*, 224 Ga. App. at 169, 480 S.E.2d at 221. The Court therefore cannot conclude that Defendant Johnson is entitled to official immunity with respect to this claim. The Court therefore denies summary judgment to Defendants with respect to Plaintiff Crowder's claim for assault and battery asserted against Defendant Johnson.

### 3. Other Claims

With the exception of Plaintiff Crowder's state law claims for intentional infliction of emotional distress and assault and battery asserted against Defendant Johnson, Plaintiffs did not respond to the arguments contained in this Motion for Summary Judgment with respect to Plaintiffs' state law claims. Plaintiffs therefore have abandoned all of their state law claims against Defendants Roberts, Crider, Gravitt, Johnson, Jones, and Davis, with the exception of Plaintiff Crowder's claims for intentional infliction of emotional distress and assault and battery asserted against Defendant Johnson. *Bute*, 998 F.Supp. at 1477; *Welch*, 978 F.Supp. at 1137.

### D. Summary

In sum, the Court grants in part and denies in part the Motion for Summary Judgment filed by Defendants Roberts, Crider, Gravitt, Johnson, Jones, and Davis. The Court denies the Motion for Summary Judgment solely with respect to the following claims: (1) Plaintiff Hammond's Eighth Amendment claim for sexual harassment or abuse asserted against Defendant Johnson in his individual capacity; (2) Plaintiff Crowder's Eighth Amendment claim for sexual harassment or abuse asserted against Defendant Johnson in his individual capacity; (3) Plaintiff Crowder's claim for intentional infliction of emotional distress asserted against Defendant Johnson, to the extent that Plaintiff Crowder seeks to hold Defendant Johnson individually liable for that claim; and (4) Plaintiff Crowder's assault and battery claims asserted against Defendant Johnson, to the extent that Plaintiff Crowder seeks to hold Defendant Johnson individually liable for those claims.

## VI. Defendant Bridwell's Motion for Summary Judgment

Defendant Bridwell also has filed a Motion for Summary Judgment. Defendant Bridwell argues that no genuine dispute exists with respect to any of Plaintiffs' claims asserted against her.

### A. § 1983 Claims

### 1. Plaintiff Trotter

Plaintiff Trotter has not alleged that any actions taken by Defendant Bridwell personally affected Plaintiff Trotter. Consequently, Plaintiff Trotter has no cognizable § 1983 claim against Defendant Bridwell, and Defendant Bridwell is entitled to summary judgment with respect to any § 1983 claims asserted against her by Plaintiff Trotter.

In any event, Plaintiff Trotter failed to respond to Defendant Bridwell's arguments with respect to Plaintiff Trotter's § 1983 claims asserted against Defendant Bridwell. Plaintiff Trotter therefore has abandoned those claims. *Bute*, 998 F.Supp. at 1477; *Welch*, 978 F.Supp. at 1137.

### 2. Plaintiff Hammond

#### a. Constitutional Violation

██ Apparently, Plaintiff Hammond claims that Defendant Bridwell violated Plaintiff Hammond's constitutional rights by allowing Mr. Clark to enter Plaintiff Hammond's cell for the purpose of having sex with Plaintiff Hammond. Presumably, Plaintiff Hammond asserts her claim under the Eighth Amendment.

The Court cannot conclude that Defendant Bridwell violated Plaintiff Hammond's Eighth Amendment rights by allowing Mr. Clark to enter Plaintiff Hammond's cell for the purpose of having sex with Plaintiff Hammond. However inappropriate Defendant Bridwell's conduct may have been, the Court cannot determine that the conduct was objectively sufficiently serious to satisfy the objective prong of Plaintiff Hammond's Eighth Amendment claim. Further, the Court cannot determine that Defendant Bridwell's conduct, by itself, is enough to allow the Court to determine that Defendant Bridwell acted with deliberate indifference or reckless disregard. Plaintiff Hammond therefore cannot establish the subjective prong of her Eight Amendment claim.

For the reasons discussed above, the Court concludes that Plaintiff Hammond has not created a genuine dispute with respect to her Eighth Amendment claim asserted against Defendant Bridwell. The Court therefore grants Defendant Bridwell's Motion for Summary Judgment with respect to this claim.

#### b. Qualified Immunity

██ In the alternative, Defendant Bridwell argues that she is entitled to qualified immunity with respect to Plaintiff Hammond's § 1983 claims asserted against her in her official capacity. The Court applies the standard set forth *supra* Part IV.A.3.a.ii.aa. to determine whether quali-fied immunity protects Defendant Bridwell.

As an initial matter, Defendant Bridwell has produced evidence showing that Defendant Bridwell's duties included caring for inmates and controlling inmates' movement within the Jail. (Def. Bridwell's Mot. Summ. J. Ex. E.) Defendant Bridwell therefore has shown that she acted within her discretionary authority when opening Plaintiff Hammond's cell door for Mr. Clark.

As discussed *supra* Part IV.A.3.a.ii., the Court next must inquire whether Plaintiff Hammond has pointed to clearly established authority that would have placed a reasonable jailer in Defendant Bridwell's position on notice that her actions were unlawful. Plaintiff Hammond has failed to point to any authority indicating that Defendant Bridwell's conduct violated clearly established law, and the Court's own research has uncovered no such authority. Further, although Defendant Bridwell's actions certainly were inappropriate, the Court cannot conclude that those actions were so obviously unlawful that qualified immunity should not apply. Defendant Bridwell consequently is entitled to qualified immunity with respect to Plaintiff Hammond's § 1983 claims asserted against Defendant Bridwell in her individual capacity.

#### c. Summary

In sum, the Court concludes that Defendant Bridwell is entitled to qualified immunity with respect to Plaintiff Hammond's § 1983 claims asserted against Defendant Bridwell in her individual capacity. The Court therefore grants Defendant Bridwell's Motion for Summary Judgment with respect to those claims.

### 3. Plaintiff Crowder

Plaintiff Crowder has not alleged that any actions taken by Defendant Bridwell personally affected Plaintiff Crowder. Consequently, Plaintiff Crowder has no cognizable § 1983 claim against Defendant Bridwell, and Defendant Bridwell is entitled to summary judgment with respect to any § 1983 claims that Plaintiff Crowder may assert against Defendant Bridwell.

Moreover, Plaintiff Crowder failed to respond to Defendant Bridwell's arguments with respect to any § 1983 claims that Plaintiff Crowder asserted against Defendant Bridwell. Plaintiff Crowder therefore has abandoned those claims. *Bute,* 998 F.Supp. at 1477; *Welch,* 978 F.Supp. at 1137.

### 4. Plaintiff Quarles

Once again, Plaintiff Quarles has not alleged that any actions taken by Defendant Bridwell personally affected Plaintiff Quarles. Plaintiff Quarles therefore has no cognizable § 1983 claim against Defendant Bridwell, and the Court grants Defendant Bridwell's Motion for Summary Judgment with respect to this claim.

Further, Plaintiff Quarles failed to respond to Defendant Bridwell's arguments with respect to Plaintiff Quarles' § 1983 claims asserted against Defendant Bridwell. Plaintiff Quarles therefore has abandoned those claims. *Bute,* 998 F.Supp. at 1477; *Welch,* 978 F.Supp. at 1137.

### 5. Summary

In sum, Defendant Bridwell is entitled to summary judgment with respect to all of Plaintiffs' § 1983 claims asserted against Defendant Bridwell in her official capacity. The Court therefore grants Defendant Bridwell's Motion for Summary Judgment with respect to those claims.[14]

### B. State Law Claims

### 1. Wrongful Coercion of Medical Treatment and Wrongful Death

Plaintiffs' Complaint includes a claim for wrongful coercion of medical treatment and wrongful death, apparently asserted by Plaintiff Trotter. (Compl.¶¶ 78–81.) The only allegations presented with respect to this claim, however, pertain to Defendant Christian. In any event, Plaintiffs have not responded to Defendant Bridwell's arguments concerning this claim. Consequently, the Court must grant summary judgment to Defendant Bridwell with respect to any claim for wrongful death or wrongful coercion of medical treatment that Plaintiffs may have asserted against Defendant Bridwell.

### 2. Intentional Infliction of Emotional Distress

### a. Plaintiff Trotter

Once again, Plaintiff Trotter has presented no evidence concerning any actions by Defendant Bridwell that affected Plaintiff Trotter. Consequently, Plaintiff Trotter has failed to establish that a genuine dispute exists with respect to any claim for intentional infliction of emotional distress that Plaintiff Trotter may have asserted against Defendant Bridwell. Additionally, Plaintiff Trotter has failed to respond to Defendant Bridwell's arguments concerning Plaintiff Trotter's intentional infliction of emotional distress claim. The Court

---

**14.** To the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Bridwell based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *supra* Part IV.A.5. Further, Plaintiffs Trotter, Crowder, and Quarles have not demonstrated that they suffered any harm as a result of any action or inaction on the part of Defendant Bridwell.

therefore grants summary judgment to Defendant Bridwell with respect to this claim.

### b. Plaintiff Hammond

Plaintiff Hammond also failed to respond to Defendant Bridwell's arguments with respect to Plaintiff Hammond's claim for intentional infliction of emotional distress asserted against Defendant Bridwell. Plaintiff Hammond therefore has abandoned this claim, and the Court grants summary judgment to Defendant Bridwell on this claim. *Bute,* 998 F.Supp. at 1477; *Welch,* 978 F.Supp. at 1137.

### c. Plaintiff Crowder

Plaintiff Crowder has presented no evidence concerning any actions by Defendant Bridwell that affected Plaintiff Crowder. Plaintiff Crowder therefore has failed to establish that a genuine dispute exists with respect to any claim for intentional infliction of emotional distress that Plaintiff Crowder may have asserted against Defendant Bridwell. Moreover, Plaintiff Crowder completely failed to respond to Defendant Bridwell's arguments with respect to this claim. The Court consequently grants summary judgment to Defendant Bridwell with respect to any intentional infliction of emotional distress claim that Plaintiff Crowder may have asserted against Defendant Bridwell.

### d. Plaintiff Quarles

Plaintiff Quarles has adduced no evidence concerning any actions by Defendant Bridwell that affected Plaintiff Quarles. Consequently, Plaintiff Quarles has failed to establish that a genuine dispute exists with respect to any claim for intentional infliction of emotional distress that Plaintiff Quarles may have asserted against Defendant Bridwell. Further, Plaintiff Quarles has failed to respond to Defendant Bridwell's arguments with respect to any such claim. The Court there-fore grants summary judgment to Defendant Bridwell with respect to any claim for intentional infliction of emotional distress that Plaintiff Quarles may have asserted against Defendant Bridwell.

### 3. Assault and Battery

As an initial matter, Plaintiffs have adduced no evidence to support any assault and battery claims that Plaintiffs may have asserted against Defendant Bridwell. Defendant Bridwell consequently would be entitled to summary judgment with respect to those claims.

In any event, Plaintiffs have failed to respond to Defendant Bridwell's arguments with respect to Plaintiffs' assault and battery claims asserted against Defendant Bridwell. Plaintiffs therefore have abandoned their assault and battery claims asserted against Defendant Bridwell.

### C. Summary

In sum, the Court concludes that Plaintiffs have failed to create a genuine dispute with respect to any of their claims asserted against Defendant Bridwell. The Court therefore grants Defendant Bridwell's Motion for Summary Judgment in its entirety.

## VII. Defendant Highfield's Motion for Summary Judgment

Defendant Highfield filed a separate Motion for Summary Judgment with respect to Plaintiffs' claims asserted against Defendant Highfield in his individual capacity. Defendant Highfield argues that no genuine dispute exists with respect to any of those claims.

### A. § 1983 Claims

### 1. Plaintiff Trotter

Plaintiff Trotter has produced no evidence in support of any § 1983 claims that

Plaintiff Trotter may have intended to assert against Defendant Highfield. Plaintiff Trotter also has failed to respond to Defendant Highfield's arguments with respect to her § 1983 claims asserted against Defendant Highfield. Consequently, Defendant Highfield is entitled to summary judgment with respect to any § 1983 claims that Plaintiff Trotter may have asserted against him in his individual capacity. *Bute,* 998 F.Supp. at 1477; *Welch,* 978 F.Supp. at 1137.

### 2. Plaintiff Hammond

#### a. Opening Plaintiff Hammond's Cell Door

Plaintiff Hammond appears to claim that Defendant Highfield opened the door of Plaintiff Hammond's cell to allow a jailer and a male inmate access to the cell. Those allegations, however, are not contained in Plaintiff Hammond's complaint, and Plaintiff Hammond may not now attempt to assert those claims in response to Defendant Highfield's Motion for Summary Judgment.

#### b. Stripping or Flashing for Cigarettes

Plaintiff Hammond also has presented evidence indicating that Defendant Highfield instructed Plaintiff Hammond to strip before him or to "flash" her breasts in exchange for cigarettes. (Hammond Dep. at 72.) Plaintiff Hammond asserts an Eighth Amendment claim based on those allegations.

As discussed *supra* Part IV.A.3.b.i, the evidence presented by Plaintiff Hammond is sufficient to establish both elements of Plaintiff Hammond's Eighth Amendment claim against Defendant Highfield. For the reasons stated *supra* Part IV.A.3.b.ii., Defendant Highfield also is not entitled to qualified immunity with respect to this claim. The Court consequently denies Defendant Highfield's Motion for Summary Judgment with respect to Plaintiff Hammond's Eighth Amendment claim based on stripping or "flashing" before Defendant Hammond in exchange for cigarettes.

#### c. Engaging in Oral Sex for Cigarettes

Plaintiff Hammond testified at her deposition that Defendant Highfield asked Plaintiff Hammond to engage in oral sex with Ms. Robinson in exchange for cigarettes. (Hammond Dep. at 130–33.) Plaintiffs' Complaint, however, does not contain this allegation, and Plaintiff Hammond may not assert such a claim in response to Defendant Highfield's Motion for Summary Judgment.

### 3. Plaintiff Crowder

Plaintiff Crowder has testified that Defendant Highfield instructed Plaintiff Crowder to "flash" Defendant Highfield in exchange for toilet paper. (Crowder Dep. at 99, 104–06, 122.) Those allegations, however, are not contained in Plaintiff Crowder's Complaint, and Plaintiff Crowder may not attempt to raise such a claim for the first time at this stage of the litigation. Defendant Highfield therefore is entitled to summary judgment for those claims.

### 4. Plaintiff Quarles

In her deposition, Plaintiff Quarles testified that Defendant Highfield asked Plaintiff Quarles to strip in exchange for cigarettes. (Quarles Dep. at 40.) Plaintiff Quarles, however, did not include such a claim in her Complaint, and the Court will not permit Plaintiff Quarles to add such a claim at this late date. Consequently, Defendant Highfield is entitled to summary judgment with respect to this claim.

### 5. Summary

In sum, the Court concludes that Defendant Highfield is entitled to summary

judgment with respect to all of Plaintiffs' § 1983 claims except for Plaintiff Hammond's Eighth Amendment claim based on sexual misconduct. The Court grants summary judgment to Defendant Highfield with respect to all of Plaintiffs' § 1983 claims asserted against Defendant Highfield except for Plaintiff Hammond's Eighth Amendment claim based on sexual misconduct.[15]

## B. State Law Claims

### 1. Wrongful Death and Wrongful Coercion of Medical Treatment

Plaintiffs' Complaint includes a claim for wrongful coercion of medical treatment and wrongful death, apparently asserted by Plaintiff Trotter. (Compl.¶¶ 78–81.) The only evidence presented with respect to this claim, however, pertains to Defendant Christian, not to Defendant Highfield. In any event, Plaintiffs have not responded to Defendant Highfield's arguments concerning this claim. The Court therefore must grant summary judgment to Defendant Highfield with respect to any claim for wrongful death or wrongful coercion of medical treatment that Plaintiffs may have asserted against Defendant Highfield.

### 2. Intentional Infliction of Emotional Distress

#### a. Plaintiff Trotter

Plaintiff Trotter has presented no evidence in support of any intentional infliction of emotional distress claim that Plaintiff Trotter may have asserted, or may have intended to assert, against Defendant Highfield. Further, Plaintiff Trotter has failed to respond to Defendant Highfield's arguments with respect to this claim. The Court consequently grants Defendant Highfield's Motion for Summary Judgment with respect to Plaintiff Trotter's intentional infliction of emotional distress claim asserted against Defendant Highfield.

#### b. Plaintiff Hammond

Plaintiff Hammond has failed to respond to Defendant Highfield's arguments pertaining to any intentional infliction of emotional distress claim that Plaintiff Hammond may have asserted against Defendant Highfield. Defendant Highfield therefore is entitled to summary judgment with respect to this claim. *Bute,* 998 F.Supp. at 1477; *Welch,* 978 F.Supp. at 1137.

#### c. Plaintiff Crowder

Plaintiff Crowder has not responded to Defendant Highfield's arguments pertaining to any intentional infliction of emotional distress claim that Plaintiff Crowder may have asserted against Defendant Highfield. Defendant Highfield therefore is entitled to summary judgment with respect to this claim. *Bute,* 998 F.Supp. at 1477; *Welch,* 978 F.Supp. at 1137.

#### d. Plaintiff Quarles

Additionally, Plaintiff Quarles has failed to respond to Defendant Highfield's arguments pertaining to any intentional infliction of emotional distress claim that Plaintiff Quarles may have asserted against Defendant Highfield. The Court therefore grants Defendant Highfield's Motion for Summary Judgment with respect to this claim. *Bute,* 998 F.Supp. at 1477; *Welch,* 978 F.Supp. at 1137.

### 3. Assault and Battery

As an initial matter, Plaintiffs have adduced no evidence to support any assault

---

**15.** To the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Highfield based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *supra* Part IV.A.5.

and battery claims that Plaintiffs may have asserted, or may have intended to assert, against Defendant Highfield. In any event, Plaintiffs have abandoned any such claims by failing to respond to Defendant Highfield's arguments with respect to those claims. The Court therefore grants Defendant Highfield's Motion for Summary Judgment with respect to any assault and battery claims that Plaintiffs may have asserted against Defendant Highfield.

### C. Summary

In sum, the Court grants in part and denies in part Defendant Highfield's Motion for Summary Judgment insofar as that Motion pertains to Plaintiffs' § 1983 claims. The Court denies Defendant Highfield's Motion for Summary Judgment solely with respect to Plaintiff Hammond's Eighth Amendment claim involving stripping or "flashing" in exchange for cigarettes asserted against Defendant Highfield.

### VIII. Defendant Christian's Motion for Summary Judgment

Defendant Christian also has filed a Motion for Summary Judgment with respect to Plaintiffs' claims asserted against Defendant Christian in his individual capacity. Defendant Christian argues that Plaintiffs have not created a genuine dispute with respect to any of their claims asserted against Defendant Christian in his individual capacity.

### A. § 1983 Claims

#### 1. Plaintiff Trotter

Plaintiff Trotter asserts a claim based on Defendant Christian's sexual relationship with Plaintiff Trotter. Presumably, this claim proceeds under the Eighth Amendment. The Court first determines whether Plaintiff Trotter has established an Eighth Amendment violation, and next addresses the question of qualified immunity.

#### a. Whether Defendant Christian's Conduct Violated the Eighth Amendment

 As discussed *supra* Parts IV. A.3.a.i. and b.i., a prison guard may violate the Eighth Amendment by sexually harassing or sexual assaulting an inmate. Here, Plaintiff Trotter has presented evidence indicating that Defendant Christian engaged in sexual intercourse with Plaintiff Trotter on several occasions, and that Plaintiff Trotter, at Defendant Christian's urging, danced nude for Defendant Christian on one occasion. (Trotter Dep. 28–29, 31–32, 35–38, 40–41, 46–48, 75–76, 144–45.) Plaintiff Trotter has testified that on at least one occasion, Plaintiff Trotter did not consent to intercourse with Defendant Christian.[16] (*Id.* at 35–38.) The Court

---

16. Defendant Christian argues that Plaintiff Trotter made statements during a law enforcement investigation indicating that Plaintiff Trotter's relationship with Defendant Christian was consensual, and that judicial estoppel bars Plaintiff Trotter from claiming now that the relationship was not consensual. As an initial matter, Defendant Christian has pointed to absolutely no authority indicating that judicial estoppel would apply to statements made during a law enforcement investigation, and the Court is not inclined to spend further time conducting research for

counsel. In any event, as discussed *supra* Note 6, the Georgia legislature has indicated that an inmate may not consent to certain types of sexual contact with a prison guard. O.C.G.A. § 16-6-5.1. *See also Carrigan,* 70 F.Supp.2d at 460 (examining totality of circumstances and concluding that inmate was incapable of consenting to sexual contact with prison guard).

Defendant Christian also argues that Plaintiff Trotter's conduct, such as writing "love letters" to Defendant Christian and describing her relationship with Defendant Christian as

concludes that this conduct is objectively sufficiently serious to satisfy the first element of Plaintiff Trotter's Eighth Amendment claim.

For the reasons discussed *supra* Part IV.A.3.a.i., Defendant Christian's conduct also satisfies the subjective element of Plaintiff Trotter's Eighth Amendment claim. Again, the Court can conceive of no legitimate penalogical purpose that possibly could be served by a jailer's conduct in engaging in a sexual relationship with an inmate. Moreover, this conduct is prohibited by a Georgia criminal statute, O.C.G.A. § 16–6–5.1, and, consequently, is "contrary to the goals of law enforcement." *Carrigan,* 70 F.Supp.2d at 454. Under these circumstances, the conduct at issue is sufficient evidence, in and of itself, of Defendant Christian's culpable state of mind. *Id.* at 455. Plaintiff Trotter thus has established the second element of the Eighth Amendment test.

### b. Whether Defendant Christian Is Entitled to Qualified Immunity

The Court next must determine whether Defendant Christian is entitled to qualified immunity with respect to Plaintiff Trotter's claims. Once again, the Court applies the standard discussed *supra* Part IV.A.3.a.ii.aa.

■ Defendant Christian has presented evidence indicating that Defendant Christian's duties included guarding inmates and controlling the movement of inmates. (Def. Bridwell's Mot. Summ. J. Ex. E.) Defendant Christian thus has established that he acted within his discretionary authority when he took the actions of which Plaintiff Trotter complains. The Court therefore must determine whether Defendant Christian's actions violated clearly established law.

Plaintiff Trotter has pointed to no clearly established authority indicating that a jailer acts unlawfully by engaging in a sexual relationship with an inmate. The Court concludes, however, that this situation is one of those rare instances in which a defendant's conduct "is so obviously contrary to constitutional norms that even in the absence of caselaw, the defense of qualified immunity does not apply." *Skrtich,* 280 F.3d at 1305 n. 9. Indeed, the Court cannot conceive how a reasonable jailer in Defendant Christian's position could not have understood that engaging in a sexual relationship with an inmate was unlawful. The Court therefore denies qualified immunity to Defendant Christian with respect to this claim.

### 2. Plaintiff Hammond

Plaintiff Hammond has presented evidence indicating that Defendant Christian opened Plaintiff Hammond's cell door to allow inmate Corey Ricks to enter, and that Mr. Ricks and Plaintiff Hammond subsequently engaged in sex. Again, Plaintiff Hammond apparently is proceeding under the Eighth Amendment.

As discussed *supra* Part V.A.2.a., this evidence is insufficient to establish an Eighth Amendment claim. In the alternative, as discussed *supra* Part V.A.2.b., Defendant Christian would be entitled to qualified immunity with respect to such a claim. The Court therefore grants Defendant Christian's Motion for Summary Judgment with respect to Plaintiff Hammond's Eighth Amendment claim asserted against Defendant Christian.

### 3. Plaintiff Crowder

Plaintiff Crowder has presented no evidence in support of any § 1983 claims that

---

"making love", evidences that the sexual relationship between Plaintiff Trotter and Defendant Christian was consensual. This argument, however, essentially presents credibility questions, which the Court cannot resolve at the summary judgment stage.

Plaintiff Crowder may have intended to assert against Defendant Christian. Defendant Christian thus is entitled to summary judgment with respect to Plaintiff Crowder's § 1983 claims asserted against Defendant Christian in his individual capacity.

#### 4. Plaintiff Quarles

At her deposition, Plaintiff Quarles testified that Defendant Christian refused to allow Plaintiff Quarles to leave a holding cell to use the bathroom, and that Defendant Christian informed Plaintiff Quarles that Defendant Christian would let Plaintiff Quarles use the bathroom in exchange for oral sex. (Quarles Dep. 24, 26, 35–36, 44.) Unfortunately for Plaintiff Quarles, Plaintiffs' Complaint alleges only that Defendant *Trammel* refused to allow Plaintiff Quarles to use the bathroom. Plaintiffs have not amended their Complaint to include allegations that Defendant Christian would not allow Plaintiff Quarles to use the bathroom. Plaintiff Quarles therefore may not assert such a claim in response to Defendant Christian's Motion for Summary Judgment.

#### 5. Summary

In sum, no genuine dispute exists with respect to most of Plaintiffs' § 1983 claims asserted against Defendant Christian in his individual capacity. Plaintiff Trotter's Eighth Amendment claim based on sexual harassment or sexual abuse, however, may proceed. The Court therefore grants Defendant Christian's Motion for Summary Judgment with respect to all of Plaintiffs' § 1983 claims asserted against Defendant Christian in his individual capacity, with the exception of Plaintiff Trotter's Eighth

Amendment claim based on sexual harassment or sexual abuse.[17]

### B. State Law Claims

#### 1. Wrongful Coercion of Medical Treatment and Wrongful Death

Plaintiffs have failed to respond to Defendant Christian's arguments pertaining to Plaintiff Trotter's claim for wrongful coercion of medical treatment and wrongful death. Plaintiffs therefore have abandoned this claim, and the Court grants summary judgment to Defendant Christian for this claim.

#### 2. Intentional Infliction of Emotional Distress

##### a. Plaintiff Trotter

Plaintiff Trotter asserts a claim for intentional infliction of emotional distress against Defendant Christian. The Court applies the standard discussed *supra* Part IV.C.1. to determine whether a genuine dispute exists with respect to Plaintiff Trotter's intentional infliction of emotional distress claim against Defendant Christian.

Plaintiff Trotter has presented evidence indicating that Defendant Christian engaged in sexual conduct with Plaintiff Trotter without her consent. As discussed *supra* Part IV.C.1., this evidence is sufficient to establish the outrageousness and egregious conduct element of Plaintiff Trotter's intentional infliction of emotional distress claim. Further, a reasonable jury could find that Defendant Christian acted with actual malice or intent to harm when he engaged in sexual conduct with Plaintiff Trotter without her consent. *Gardner,* 224 Ga.App. at 169, 480 S.E.2d at 221. Consequently, the defense of official immu-

---

**17.** To the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Christian based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *supra* Part IV.A.5.

nity does not protect Defendant Christian, and Defendant Christian is not entitled to summary judgment with respect to Plaintiff Trotter's claim for intentional infliction of emotional distress.

### b. Plaintiff Hammond

The Court applies the standard discussed *supra* Part IV.C.1. when addressing Plaintiff Hammond's claim for intentional infliction of emotional distress. The Court concludes that the evidence presented by Plaintiff Hammond simply is not sufficient to create a genuine dispute with respect to Plaintiff Hammond's claim for intentional infliction of emotional distress asserted against Defendant Christian. In any event, Plaintiff Hammond abandoned the claim by failing to respond to Defendant Christian's arguments pertaining to this claim. The Court therefore grants summary judgment to Defendant Christian with respect to Plaintiff Hammond's claim for intentional infliction of emotional distress.

### c. Plaintiff Crowder

Plaintiff Crowder has presented no evidence concerning any actions by Defendant that affected Plaintiff Crowder. Consequently, Plaintiff Crowder has failed to establish that a genuine dispute exists with respect to any claim for intentional infliction of emotional distress that Plaintiff Crowder may have asserted against Defendant Christian. Additionally, Plaintiff Crowder has failed to respond to Defendant Christian's arguments concerning Plaintiff Crowder's intentional infliction of emotional distress claim. The Court therefore grants summary judgment to Defendant Christian with respect to this claim.

### d. Plaintiff Quarles

Plaintiff Quarles testified at her deposition that Defendant Christian refused to allow Plaintiff Quarles to use the bathroom, and that Defendant Christian commented that he would allow Plaintiff Quarles to use the bathroom in exchange for oral sex. (Quarles Dep. at 24, 25, 35–36, 44.) Plaintiffs' Complaint, however, alleges that Defendant *Trammel* took those actions. Plaintiff Quarles may not now assert a claim for intentional infliction of emotional distress against Defendant Christian based on those actions.

### 3. Assault and Battery

### a. Plaintiff Trotter

Plaintiff Trotter has asserted claims for assault and battery against Defendant Christian. Plaintiff Trotter has adduced sufficient evidence to support a claim for assault against Defendant Christian, as the evidence in the record indicates that Defendant Christian placed Plaintiff Trotter in apprehension of an unlawful touch when Defendant Christian pointed a gun at Plaintiff Trotter and when he attempted to engage in sexual conduct with her. (Trotter Dep. at 28–29, 31–32, 35–38, 40–48, 75–76, 127–29.) *Gardner,* 224 Ga.App. at 169, 480 S.E.2d at 221. Plaintiff Trotter also has presented sufficient evidence to indicate that Defendant Christian unlawfully touched Plaintiff Trotter when he engaged in sexual relations with her. 224 Ga.App. at 169, 480 S.E.2d at 221. The Court cannot find that, as a matter of law, the defense of official immunity would bar Plaintiff Trotter's assault and battery claims, as a jury could find that Defendant Christian acted with actual malice and intent to harm when he engaged in a sexual relationship with Plaintiff Trotter and when he pointed a gun at Plaintiff Trotter. 224 Ga.App. at 169, 480 S.E.2d at 221. Summary judgment therefore is not appropriate with respect to this claim.

### b. Plaintiff Hammond

The only evidence relating to any assault and battery claim that Plaintiff Hammond may attempt to assert against Defendant Christian is Plaintiff Hammond's testimony that Defendant Christian pointed a gun at Plaintiffs Hammond and Trotter. (Hammond Dep. at 61.) Plaintiffs' Complaint, however, simply alleges that Defendant Christian threatened Plaintiff Trotter with a gun, and does not allege that Defendant Christian also threatened Plaintiff Hammond. Under these circumstances, Plaintiff Hammond may not now assert a claim for assault and battery against Defendant Christian.

In any event, Plaintiff Hammond did not respond to Defendant Christian's arguments with respect to her claim for assault and battery. Plaintiff Hammond therefore has abandoned this claim, and Defendant Christian is entitled to summary judgment with respect to the claim.

### c. Plaintiff Crowder

Once again, Plaintiff Crowder has presented no evidence that would support a claim for assault and battery against Defendant Christian. Plaintiff Crowder thus has failed to establish that a genuine dispute exists with respect to any claim for assault and battery that she may have asserted against Defendant Christian. Additionally, Plaintiff Crowder has failed to respond to Defendant Christian's arguments concerning Plaintiff Crowder's assault and battery claim. The Court therefore grants summary judgment to Defendant Christian with respect to this claim.

### d. Plaintiff Quarles

Plaintiffs' Complaint does not appear to allege that Defendant Christian engaged in any actions that would support an assault and battery claim against him filed by Plaintiff Quarles, and none of the evidence in the record supports such a claim. Additionally, Plaintiff Quarles failed to respond to Defendant Christian's arguments with respect to her assault and battery claim. Consequently, the Court grants summary judgment to Defendant Christian with respect to Plaintiff Quarles' assault and battery claim asserted against Defendant Christian.

### C. Summary

In sum, the Court grants in part and denies in part Defendant Christian's Motion for Summary Judgment. The Court grants Defendant Christian's Motion for Summary Judgment with respect to all of Plaintiffs' claims except Plaintiff Trotter's Eighth Amendment claim based on sexual harassment or abuse, Plaintiff Trotter's claim for intentional infliction of emotional distress, and Plaintiff Trotter's claims for assault and battery.

## IX. Defendant Trammel's Motion for Summary Judgment

Defendant Trammel has moved for summary judgment with respect to Plaintiffs' claims asserted against him in his individual capacity. Defendant Trammel argues that no genuine dispute exists with respect to any of those claims.

### A. § 1983 Claims

#### 1. Plaintiff Trotter

Plaintiffs have presented no evidence in support of any § 1983 claim that Plaintiff Trotter may have intended to assert against Defendant Trammel. No genuine dispute consequently exists with respect to any of those claims, and the Court grants summary judgment to Defendant Trammel with respect to any § 1983 claims that Plaintiff Trotter may have intended to assert against Defendant Trammel.

## 2. Plaintiff Hammond

Plaintiff Hammond has presented evidence showing that Defendant Trammel had sex with Plaintiff Hammond on two occasions. (Hammond Dep. at 48–50, 56.) Plaintiff Hammond asserts a claim based on Defendant Trammel's sexual relationship with Plaintiff Hammond. Presumably, this claim proceeds under the Eighth Amendment. The Court first determines whether Plaintiff Hammond has established an Eighth Amendment violation, and next addresses the question of qualified immunity.

### a. Whether Defendant Trammel's Conduct Violated the Eighth Amendment

As discussed *supra* Parts IV.A.3.a.i., b.i., and c.i., a prison guard may violate the Eighth Amendment by sexually harassing or sexual assaulting an inmate. Here, Plaintiff Hammond has presented evidence indicating that Defendant Trammel engaged in sexual intercourse with Plaintiff Hammond on two occasions.[18] (Hammond Dep. at 48–50, 56.) The Court concludes that this conduct is objectively sufficiently serious to satisfy the first element of Plaintiff Hammond's Eighth Amendment claim.

For the reasons discussed *supra* Part IV.A.3.c.i., Defendant Trammel's conduct also satisfies the subjective element of Plaintiff Hammond's Eighth Amendment claim. Again, the Court can conceive of no legitimate penalogical purpose that possibly could be served by a jailer's conduct in engaging in a sexual relationship with an inmate. Moreover, this conduct is prohibited by a Georgia criminal statute, O.C.G.A.

§ 16–6–5.1, and, consequently, is "contrary to the goals of law enforcement." *Carrigan*, 70 F.Supp.2d at 454. Under these circumstances, the conduct at issue is sufficient evidence, in and of itself, of Defendant Trammel's culpable state of mind. *Id.* at 455. Plaintiff Hammond thus has established the second element of the Eighth Amendment test.

### ii. Whether Defendant Trammel Is Entitled to Qualified Immunity

The Court next must determine whether Defendant Trammel is entitled to qualified immunity with respect to Plaintiff Hammond's claims. Once again, the Court applies the standard discussed *supra* Part IV.A.3.a.ii.aa.

Defendant Trammel has presented evidence indicating that Defendant Trammel's duties included guarding inmates and controlling the movement of inmates. (Def. Bridwell's Mot. Summ. J. Ex. E.) Defendant Trammel thus has established that he acted within his discretionary authority when he took the actions of which Plaintiff Hammond complains. The Court therefore must determine whether Defendant Trammel's actions violated clearly established law.

Plaintiff Hammond has pointed to no clearly established authority indicating that a jailer acts unlawfully by engaging in a sexual relationship with an inmate. The Court concludes, however, that this situation is one of those rare instances in which a defendant's conduct "is so obviously contrary to constitutional norms that even in the absence of caselaw, the defense of qualified immunity does not apply."

---

18. Once again, Defendant Trammel argues that Plaintiff Hammond's relationship with Defendant Christian was consensual. The Court finds that this argument is without merit, as discussed *supra* Notes 6 and 16. O.C.G.A. § 16–6–5.1 (noting that consent is no defense to charges of sexual conduct between prison guard and inmate). *See also Carrigan*, 70 F.Supp.2d at 460 (examining totality of circumstances and concluding that inmate was incapable of consenting to sexual contact with prison guard).

*Skrtich,* 280 F.3d at 1305 n. 9. Indeed, the Court cannot conceive how a reasonable jailer in Defendant Trammel's position could not have understood that engaging in a sexual relationship with an inmate was unlawful, even if the inmate appeared willing to participate in that relationship. The Court therefore denies qualified immunity to Defendant Trammel with respect to this claim.

### 3. Plaintiff Crowder

No evidence in the record supports any § 1983 claim that Plaintiff Crowder may have intended to assert against Defendant Trammel. Defendant Trammel therefore is entitled to summary judgment with respect to any § 1983 claim asserted against him by Plaintiff Crowder.

### 4. Plaintiff Quarles

Plaintiffs' Complaint alleged that Defendant Trammel denied Plaintiff Quarles access to a bathroom, and that Defendant Trammel informed Plaintiff Quarles that Plaintiff Quarles could use the bathroom in exchange for oral sex. During her deposition, however, Plaintiff Quarles testified that Defendant Christian, rather than Defendant Trammel, had engaged in this conduct. (Quarles Dep. at 24, 26, 35–36, 44.) No evidence supports any § 1983 claim that Plaintiff Quarles may have intended to assert against Defendant Trammel, and the Court grants Defendant Trammel's Motion for Summary Judgment with respect to Plaintiff Quarles' § 1983 claim asserted against him.

### 5. Summary

In sum, the Court concludes that, with the exception of Plaintiff Hammond's Eighth Amendment claim based on sexual harassment or abuse, no genuine dispute exists with respect to Plaintiffs' § 1983 claims asserted against Defendant Trammel in his individual capacity. The Court therefore grants summary judgment to Defendant Trammel with respect to all of Plaintiffs' § 1983 claims asserted against him in his individual capacity, except for Plaintiff Hammond's Eighth Amendment claim based on sexual harassment or abuse.[19]

## B. State Law Claims

### 1. Wrongful Death and Wrongful Coercion of Medical Treatment

No allegations contained in Plaintiffs' Complaint indicate that Plaintiffs intended to assert a claim for wrongful death and wrongful coercion of medical treatment against Defendant Trammel. Additionally, Plaintiffs have failed to produce any evidence in support of such a claim. Consequently, the Court grants Defendant Trammel's Motion for Summary Judgment with respect to this claim.

### 2. Intentional Infliction of Emotional Distress

#### a. Plaintiff Trotter

Plaintiff Trotter has introduced no evidence in support of any claim for intentional infliction of emotional distress that Plaintiff Trotter may have intended to assert against Defendant Trammel. Further, Plaintiff Trotter has failed to respond to Defendant Trammel's arguments with respect to any such claim. The Court

---

**19.** To the extent that Plaintiffs intended to assert an Eighth Amendment claim against Defendant Trammel based on an alleged failure to protect Plaintiffs from a known risk of harm, summary judgment would be appropriate for that claim for the reasons stated *supra* Part IV.A.5. Further, Plaintiffs Trotter, Crowder, and Quarles have not demonstrated that they suffered any harm as a result of any action or inaction on the part of Defendant Trammel.

therefore grants summary judgment to Defendant Trammel on this claim.

### b. Plaintiff Hammond

Plaintiff Hammond has not responded to Defendant Trammel's arguments with respect to Plaintiff Hammond's claim for intentional infliction of emotional distress. Plaintiff Hammond therefore has abandoned this claim, and the Court grants summary judgment to Defendant Trammel on the claim.

### c. Plaintiff Crowder

Plaintiff Crowder has produced no evidence that would support her claim for intentional infliction of emotional distress against Defendant Trammel, and has not responded to Defendant Trammel's arguments with respect to this claim. The Court therefore grants Defendant Trammel's Motion for Summary Judgment with respect to Plaintiff Crowder's claim for intentional infliction of emotional distress.

### d. Plaintiff Quarles

Plaintiffs' Complaint alleged that Defendant Trammel prohibited Plaintiff Quarles from leaving a holding cell to use the bathroom, and that Defendant Trammel promised Plaintiff Quarles access to a bathroom in exchange for oral sex. Plaintiff Quarles, however, testified at her deposition that Defendant Christian, rather than Defendant Trammel, denied Plaintiff Quarles access to a bathroom and offered Plaintiff Quarles access to a bathroom in exchange for oral sex. (Quarles Dep. at 24, 26, 35–36, 44.) No genuine dispute therefore remains with respect to Plaintiff Quarles' intentional infliction of emotional distress claim asserted against Defendant Trammel, and the Court grants Defendant Trammel's Motion for Summary Judgment with respect to that claim.

### 3. Assault and Battery

### a. Plaintiff Trotter

Plaintiff Trotter presented no evidence in support of any assault and battery claims that Plaintiff Trotter may have intended to assert against Defendant Trammel, and failed to respond to Defendant Trammel's arguments with respect to such claims. The Court therefore grants summary judgment to Defendant Trammel on Plaintiff Trotter's claim for assault and battery.

### b. Plaintiff Hammond

Plaintiff Hammond has not responded to Defendant Trammel's arguments with respect to Plaintiff Hammond's claim for assault and battery. Plaintiff Hammond therefore has abandoned this claim, and the Court grants summary judgment to Defendant Trammel with respect to Plaintiff Hammond's claim for assault and battery asserted against Defendant Trammel.

### c. Plaintiff Crowder

No evidence in the record supports any claim for assault and battery that Plaintiff Crowder may have intended to assert against Defendant Trammel. Further, Plaintiff Crowder failed to respond to Defendant Trammel's arguments with respect to her assault and battery claim. Defendant Trammel therefore is entitled to summary judgment with respect to Plaintiff Crowder's assault and battery claim.

### d. Plaintiff Quarles

Plaintiff Quarles has produced no evidence that would support her claim for assault and battery against Defendant Trammel. Plaintiff Quarles also has not responded to Defendant Trammel's arguments with respect to her assault and battery claim. Consequently, the Court grants Defendant Trammel's Motion for

Summary Judgment with respect to Plaintiff Quarles' assault and battery claim.

### C. Summary

In sum, the Court grants in part and denies in part Defendant Trammel's Motion for Summary Judgment. The Court grants the Motion with respect to all claims except Plaintiff Hammond's Eighth Amendment claim for sexual harassment or abuse.

### X. Conclusion

ACCORDINGLY, the Court **GRANTS** the Joint Motion by Defendants Gordon County, Christian, Trammel, Crider, Highfield, Gravitt, Bridwell, Jones, Roberts, and Davis to Disallow Plaintiffs' Use of Expert Witness [31], **GRANTS** Defendant Gordon County's Motion for Summary Judgment [41], and **GRANTS IN PART AND DENIES IN PART** the Motion for Summary Judgment Filed by Defendants Crider, Gravitt, Johnson, Jones, Roberts, and Davis [43]. The Court **DENIES** the Motion for Summary Judgment Filed by Defendants Crider, Gravitt, Johnson, Jones, Roberts, and Davis solely with respect to the following claims: (1) Plaintiff Hammond's Eighth Amendment claim for sexual harassment or abuse asserted against Defendant Johnson in his individual capacity; (2) Plaintiff Crowder's Eighth Amendment claim for sexual harassment or abuse asserted against Defendant Johnson in his individual capacity; (3) Plaintiff Crowder's claim for intentional infliction of emotional distress asserted against Defendant Johnson, to the extent that Plaintiff Crowder seeks to hold Defendant Johnson individually liable; and (4) Plaintiff Crowder's claims for assault and battery asserted against Defendant Johnson, to the extent that Plaintiff Crowder seeks to hold Defendant Johnson individually liable. The Court **GRANTS** Defendant Bridwell's Motion for Summary Judgment [45]. The Court **GRANTS IN PART AND DENIES IN PART** Defendant Highfield's Motion for Summary Judgment [46], and **DENIES** that Motion solely with respect to Plaintiff Hammond's Eighth Amendment claim based on stripping or "flashing," asserted against Defendant Highfield in his individual capacity. The Court **GRANTS IN PART AND DENIES IN PART** Defendant Trammel's Motion for Summary Judgment [47], and **DENIES** that Motion solely with respect to Plaintiff Hammond's Eighth Amendment claim for sexual harassment or abuse asserted against Defendant Trammel in his individual capacity. The Court **GRANTS IN PART AND DENIES IN PART** Defendant Christian's Motion for Summary Judgment [48], and **DENIES** that Motion solely with respect to the following claims: (1) Plaintiff Trotter's Eighth Amendment claim for sexual harassment or abuse asserted against Defendant Christian in his individual capacity; (2) Plaintiff Trotter's claim for intentional infliction of emotional distress asserted against Defendant Christian; and (3) Plaintiff Trotter's claims for assault and battery asserted against Defendant Christian. The Court **SUSTAINS** Defendants' Objections to the Affidavit of David M. Bogard [105].

The Court **DIRECTS** Plaintiffs to notify Defendants and the Court within ten days of the date of this Order as to whether Plaintiffs plan to present expert testimony from David M. Bogard. If Plaintiffs plan to present testimony from Mr. Bogard, the Court will reopen discovery for forty-five days to allow the remaining Defendants to depose Mr. Bogard and to retain their own expert witness. If Plaintiffs do not intend to present testimony from Mr. Bogard, or if Plaintiffs do not notify the Court and Defendants of their intention to present testimony from Mr. Bogard as directed in this Order, the Court ORDERS Plaintiffs and the remaining Defendants to file their

proposed consolidated pretrial order within thirty days.

The Court **DIRECTS** the Clerk to place this case on the Court's next available trial calendar following the parties' submission of their proposed consolidated pretrial order. *All motions in limine are due no later than seven business days prior to the date on which the trial of this case is originally scheduled to begin. Absent a showing of good cause, the Court will not consider untimely-filed motions in limine.*